**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DOMINIK ZOLKOS, DZIANIS KLIVETS, JAMES MCCOY, JOE WALLACE and LIONEL JONES on behalf of himself and all others similarly situated,**<br><br>Plaintiffs,<br><br>v.<br><br>**SCRIPTFLEET, INC., f/k/a NETWORK EXPRESS, PARTSFLEET, INC., PARTSFLEET II, INC., and FLEETGISTICS HOLDINGS, INC.,**<br><br>Defendant. | No. 12-cv-08230<br><br>Judge: Honorable Gary Feinerman |

## DEFENDANTS' ANSWER TO PLAINTIFFS' AMENDED COMPLAINT

Defendants SCRIPTFLEET, INC. ("Scriptfleet"), PARTSFLEET, INC. ("Partsfleet"), PARTSFLEET II, INC. ("Partsfleet II"), and FLEETGISTICS HOLDINGS, INC. ("Fleetgistics Holdings") (collectively "Defendants") hereby individually and collectively respond to the Amended Complaint ("Complaint") filed by Plaintiffs DOMINIK ZOLKOS, DZIANIS KLIVETS, JAMES MCCOY, JOE WALLACE and LIONEL JONES (hereinafter, "Plaintiffs") in the above-captioned matter.

Defendants individually and collectively deny each and every allegation in the Complaint except as expressly admitted by one or more Defendant below. All admissions and partial admissions are made solely on behalf of the identified Defendant or Defendants, and all remaining Defendants should be deemed to deny all of the allegations, including those admitted

or partially admitted by the others, unless expressly stated otherwise herein.[1] Subject to the

foregoing, Defendants respond to the numbered paragraphs of the Complaint as follows:

## INTRODUCTION

2.      This is a collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*., and is brought to remedy widespread wage and hour violations by Fleetgistics Holdings, Inc., Partsfleet, Inc., Partsfleet II, Inc. (collectively "Partsfleet"), and Scriptfleet, Inc., f/kla Network Express ("Scriptfleet") (collectively "Fleetgistics"), that have deprived Plaintiffs and all other current and former Fleetgistics drivers, couriers and delivery drivers throughout the United States of overtime and other wages to which they are entitled.

        **ANSWER:**    Defendants admit that Plaintiffs purport to bring this case on behalf of

themselves and others.  Defendants deny the remaining allegations set forth in Paragraph 2 of the

Complaint.

3.      Plaintiffs Dominic [sic] Zolkos and Dzianis Kliavets also bring this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all similarly situated current and former drivers, couriers and delivery drivers who worked for Fleetgistics in Illinois, to remedy violations of the labor laws of Illinois.

        **ANSWER:**    Defendants admit that plaintiffs Dominik Zolkos ("Zolkos") and Dzianis

Kliavets ("Kliavets") purport to bring suit as a putative class action pursuant to Federal Rule of

Civil Procedure 23 on behalf of themselves and other similarly situated individuals to remedy

purported violations of the labor laws of Illinois.  Defendants deny the remaining allegations set

forth in Paragraph 3 of the Complaint.

4.      Plaintiff James McCoy also brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all similarly situated current and former drivers, couriers and delivery drivers who worked for Fleetgistics in New York, to remedy violations of the labor laws of New York.

---

[1] For example, if in answering a Paragraph one Defendant admits an allegation, and all Defendants "deny the remaining allegations" in the Paragraph, all Defendants other than the one admitting the allegation deny all allegations contained in the Paragraph.

**ANSWER:** Defendants admit that plaintiff James McCoy ("McCoy") purports to bring suit as a putative class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and other similarly situated individuals to remedy purported violations of the labor laws of New York. Defendants deny the remaining allegations set forth in Paragraph 4 of the Complaint.

5. Plaintiff Joe Wallace also brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all similarly situated current and former drivers, couriers and delivery drivers who worked for Fleetgistics in Kentucky, to remedy violations of the labor laws of Kentucky.

**ANSWER:** Defendants admit that plaintiff Joe Wallace ("Wallace") purports to bring suit as a putative class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and other similarly situated individuals to remedy purported violations of the labor laws of Kentucky. Defendants deny the remaining allegations set forth in Paragraph 5 of the Complaint.

6. Plaintiff Lionel Jones also brings this action as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all similarly situated current and former drivers, couriers and delivery drivers who worked for Fleetgistics in Connecticut, to remedy violations of the labor laws of Connecticut.

**ANSWER:** Defendants admit that plaintiff Lionel Jones ("Jones") purports to bring suit as a putative class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and other similarly situated individuals to remedy purported violations of the labor laws of Connecticut. Defendants deny the remaining allegations set forth in Paragraph 6 of the Complaint.

7. At all times material hereto, Fleetgistics misclassified its drivers as independent contractors, despite exercising extensive control over the manner in which they conducted their work.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 7 of the Complaint.

8.     Under federal as well as Illinois, New York, Kentucky and Connecticut law, employees must be paid one and one-half times their regular rate of pay for all hours over 40 worked in a week, unless they qualify for a statutory exemption.

**ANSWER:**     Paragraph 8 of the Complaint sets forth conclusions of law to which no response is required.  To the extent that a response is deemed necessary, Defendants deny the allegations set forth in Paragraph 8 of the Complaint, and further deny that any Plaintiff was an employee of any Defendant.

9.     Fleetgistics also made deductions from drivers', couriers' and delivery drivers' wages for uniforms, equipment, insurance, and other expenses.

**ANSWER:**     Defendants deny that they employ any drivers, couriers or delivery drivers; deny that they paid/pay 'wages' to such purported employees; and, therefore, further deny making deductions from such 'wages.'  Defendants deny the remaining allegations set forth in Paragraph 9 of the Complaint.

10.     Through the conduct described in this Amended Class Action Complaint, Fleetgistics has violated federal and state law.  Accordingly, Plaintiffs, on behalf of themselves and all others similarly situated, bring these claims and seek unpaid compensation, liquidated damages, reasonable attorneys' fees and costs, and all other available and appropriate relief to which they and the other drivers, couriers and delivery drivers are entitled.

**ANSWER:**     Defendants admit that Plaintiffs purport to bring claims on behalf of themselves and others.  Defendants deny the remaining allegations set forth in Paragraph 10 of the Complaint.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331 and 1337, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1367.

**ANSWER:**     Paragraph 11 of the Complaint sets forth conclusions of law to which no response is required.  To the extent that a response is deemed necessary, Defendants deny the allegations set forth in Paragraph 11 of the Complaint.

12.    Plaintiffs are diverse in terms of citizenship from Defendant Fleetgistics Holdings, Inc.

**ANSWER:**    Paragraph 12 of the Complaint sets forth conclusions of law to which no response is required.   To the extent that a response is deemed necessary, Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint and therefore deny any and all allegations set forth in Paragraph 12 of the Complaint.

13.    Upon information and belief, the amount in controversy in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 13 of the Complaint and therefore deny any and all allegations set forth in Paragraph 13 of the Complaint.

14.    Defendants are subject to personal jurisdiction in Illinois.

**ANSWER:**    Paragraph 14 of the Complaint sets forth conclusions of law to which no response is required.   To the extent that a response is deemed necessary, Defendant Scriptfleet and Defendant Partsfleet II admit that they are registered and qualified to do business in Illinois. Defendants deny the remaining allegations set forth in Paragraph 14 of the Complaint.

15.    Upon information and belief, the number of members of all proposed plaintiff classes in the aggregate is more than 100.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 of the Complaint and therefore deny any and all allegations set forth in Paragraph 15 of the Complaint.

16.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because these claims are so related to the claims in the FLSA action that they form a part of the same case or controversy.

**ANSWER:** Paragraph 16 of the Complaint sets forth conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendants deny the allegations set forth in Paragraph 16 of the Complaint.

17. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to claims in this Amended Class Action Complaint took place in this judicial district.

**ANSWER:** Paragraph 17 of the Complaint sets forth conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendants deny the allegations set forth in Paragraph 17 of the Complaint.

18. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

**ANSWER:** Paragraph 18 of the Complaint sets forth conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendants deny the allegations set forth in Paragraph 18 of the Complaint.

## PARTIES

### *Plaintiff Dominik Zolkos*

19. Plaintiff Dominik Zolkos ("Zolkos") is an individual residing in Oak Lawn, Illinois. He worked for Fleetgistics' Scriptfleet division as a driver delivering prescription medications to nursing homes from approximately February 9, 2009 until approximately September 2012.

**ANSWER:** Defendant Scriptfleet admits that it is a third party logistics company in the business of arranging transportation and delivery services on behalf of customers in the pharmaceutical/healthcare industry; that Scriptfleet entered into an independent contractor relationship with Zolkos, which was memorialized in a written agreement; that Scriptfleet contracted transportation and delivery services it arranged to Zolkos for performance of the services on behalf of the customer; and that the services contracted to Zolkos included

-6-

transportation and delivery services performed in Illinois. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 19 of the Complaint, including allegations relating to Zolkos' current residence, and therefore deny all remaining allegations set forth in Paragraph 19 of the Complaint.

20. Zolkos' primary delivery routes included deliveries in Libertyville, Northbrook, Oak Lawn, and Palos Heights, Illinois. Zolkos made his deliveries primarily from pharmacies in Woodridge, and Bensonville, Illinois.

**ANSWER:** Defendants currently lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint, and therefore deny any and all allegations set forth in Paragraph 20 of the Complaint.

21. Fleetgistics did not pay Zolkos a premium when he worked in excess of 40 hours in a workweek.

**ANSWER:** Defendant Scriptfleet admits that the amounts it paid for Zolkos' services were not calculated based on the number of hours involved in performing the services and, therefore, admits that no such 'premium' was paid. Defendants deny the remaining allegations set forth in Paragraph 21 of the Complaint.

22. Zolkos was required to pay for a uniform from Fleetgistics and to wear it while making deliveries for Fleetgistics.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 22 of the Complaint.

23. Fleetgistics required Zolkos to pay for vehicle insurance coverage, and to pay to use and maintain his own vehicle to make deliveries for Fleetgistics.

**ANSWER:** Defendant Scriptfleet admits that, consistent with the terms of the parties' written agreement, Zolkos was responsible for all costs associated with his operation and the transportation services he provided for customers, including the cost of the delivery vehicle(s) necessary for performance of the contracted services, as well as the related costs of vehicle

insurance, maintenance and operation (including fuel). Defendants deny the remaining allegations set forth in Paragraph 23 of the Complaint.

24.     Fleetgistics also deducted approximately $100 from each of Plaintiff Zolkos' bi-weekly paychecks for uniform rentals, insurance, and the rental of a scanner, all of which Fleetgistics required its drivers to obtain from it, and to maintain at the drivers' own expense.

**ANSWER:**     Defendant Scriptfleet admits that Zolkos was responsible for all costs associated with his operation and the transportation services he provided for customers, including the cost of any communication device(s) and/or scanner(s), insurance and any apparel worn by Zolkos or his subcontractors and/or employees.   Defendant Scriptfleet further admits that Zolkos had no obligation to lease or purchase a scanner or other communications equipment from Scriptfleet and that, to the extent Zolkos chose to do so, he did so voluntarily and in exchange for payment at fair market value.   Defendant Scriptfleet further admits that, to the extent Scriptfleet deducted any amount from settlement monies owed to Zolkos, Zolkos directed Scriptfleet to perform the deductions and specifically authorized the deductions in writing. Defendants deny the remaining allegations set forth in Paragraph 24 of the Complaint.

25.     For the first approximately 2½ (two and a half) years of his employment, Plaintiff Zolkos regularly worked approximately 48 hours per week, or more.   He was never paid overtime premium pay.

**ANSWER:**     Defendant Scriptfleet admits that Zolkos was not paid 'overtime premium pay' in connection with the contract services Scriptfleet arranged and Zolkos performed for customers.   Defendants deny the remaining allegations set forth in Paragraph 25 of the Complaint.

26.     Plaintiff Zolkos has consented to join this action and has completed a written consent form, a copy of which is attached as **Exhibit A** to this Amended Class Action Complaint.

**ANSWER:** Defendants admit that Exhibit A to the Complaint purports to be a written consent form executed by Zolkos. Defendants lack knowledge or information sufficient to form a belief as to truth of the remaining allegations set forth in Paragraph 26 of the Complaint and therefore deny all remaining allegations set forth in Paragraph 26 of the Complaint.

### *Plaintiff Dzianis Kliavets*

27. Plaintiff Dzianis Kliavets ("Kliavets") is an individual residing in Mount Prospect, Illinois. He worked for Fleetgistics' Partsfleet division as a driver delivering auto parts to automotive retail stores from approximately February 2008 until approximately November 13, 2011.

**ANSWER:** Defendant Partsfleet II admits that it is a third party logistics company in the business of arranging transportation and delivery services on behalf of customers in the automotive industry; that Partsfleet II entered into an independent contractor relationship with Kliavets, which was memorialized in a written agreement; that Partsfleet II contracted transportation and delivery services it arranged to Kliavets for performance of the services on behalf of the customer; and that the services contracted to Kliavets included transportation and delivery services performed in Illinois. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 27 of the Complaint, including allegations relating to Kliavets's current residence, and therefore Defendants deny all remaining allegations set forth in Paragraph 27 of the Complaint.

28. Kliavets' primary delivery route was in Chicago, Lombard, Streamwood, Arlington Heights and Skokie, Illinois. Kliavets made his deliveries primarily from an auto parts warehouse in Chicago, Illinois.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Complaint, and therefore deny any and all allegations set forth in Paragraph 28 of the Complaint.

29.    Fleetgistics did not pay Kliavets a premium when he worked in excess of 40 hours in a workweek.

**ANSWER:**    Defendant Partsfleet II admits that the amounts it paid for Kliavets' services were not calculated based on the number of hours involved in performing the services and, therefore, admits that no 'premium' was paid.  Defendants deny the remaining allegations set forth in Paragraph 29 of the Complaint.

30.    Kliavets was required to pay for a uniform from Fleetgistics and to wear it while making deliveries for Fleetgistics.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 30 of the Complaint.

31.    Fleetgistics required Kliavets to pay for vehicle insurance coverage, and to pay to use and maintain his own vehicle to make deliveries for Fleetgistics.

**ANSWER:**    Defendant Partsfleet II admits that, consistent with the terms of the parties' written agreement, Kliavets was responsible for all costs associated with his operation and the transportation services he provided for customers, including the cost of the delivery vehicle(s) necessary for performance of the contracted services, as well as the related costs of vehicle insurance, maintenance and operation (including fuel).  Defendants deny the remaining allegations set forth in Paragraph 31 of the Complaint.

32.    Fleegistics [sic] deducted approximately $50 from each of Kliavets' weekly paychecks for the rental of a scanner and insurance, which Fleetgistics required its drivers to obtain from it, and to maintain at the drivers' own expense.

**ANSWER:**    Defendant Partsfleet II admits that Kliavets was responsible for all costs associated with his operation and the transportation services he provided for customers, including the cost of any communication device(s) and/or scanner(s), insurance and any apparel worn by Kliavets or his subcontractors and/or employees.  Defendant Partsfleet II further admits that Kliavets had no obligation to lease or purchase a scanner or other communications

equipment from Partsfleet II and that, to the extent Kliavets chose to do so, he did so voluntarily and in exchange for payment at fair market value. Defendant Partsfleet II further admits that, to the extent Partsfleet II deducted any amount from settlement monies owed to Kliavets, Kliavets directed Partsfleet II to perform the deductions and specifically authorized the deductions in writing. Defendants deny the remaining allegations set forth in Paragraph 32 of the Complaint.

33. From approximately February 2008 to approximately November 2010, Kliavets regularly worked approximately 65 hours per week, or more. From approximately November 2010 to November 2011, Kliavets regularly worked approximately 50 hours per week, or more. He was never paid overtime premium pay.

**ANSWER:** Defendant Partsfleet II admits that Kliavets was not paid 'overtime premium pay' in connection with the contract services Partsfleet II arranged and Kliavets performed for customers. Defendants deny the remaining allegations set forth in Paragraph 33 of the Complaint.

34. Plaintiff Kliavets has consented to join this action and has completed a written consent form, a copy of which is attached as **Exhibit B** to this Amended Class Action Complaint.

**ANSWER:** Defendants admit that Exhibit B to the Complaint purports to be a written consent form executed by Kliavets. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 34 of the Complaint and therefore deny all remaining allegations set forth in Paragraph 34 of the Complaint.

### *Plaintiff James McCoy*

35. Plaintiff James McCoy ("McCoy") is an individual residing in Greece, New York. He worked for Fleetgistics' Scriptfleet division as a driver delivering prescription medications to nursing homes from approximately August, 2010 until approximately April 30, 2011.

**ANSWER:** Defendant Scriptfleet admits that it is a third party logistics company in the business of arranging transportation and delivery services on behalf of customers in the

pharmaceutical/healthcare industry; that Scriptfleet entered into an independent contractor relationship with McCoy, which was memorialized in a written agreement; that Scriptfleet contracted transportation and delivery services it arranged to McCoy for performance of the services on behalf of the customer; and that the services contracted to McCoy included transportation and delivery services performed in Illinois. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 35 of the Complaint, including allegations relating to McCoy's current residence, and therefore deny all remaining allegations set forth in Paragraph 35 of the Complaint.

36.     McCoy made his deliveries primarily from a pharmacy in Rochester, New York.

**ANSWER:**     Defendants currently lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint, and therefore deny any and all allegations set forth in Paragraph 36 of the Complaint.

37.     Fleetgistics did not pay McCoy a premium when he worked in excess of 40 hours in a workweek.

**ANSWER:**     Defendant Scriptfleet admits that the amounts it paid for McCoy's services were not calculated based on the number of hours involved in performing the services and, therefore, admits that no such 'premium' was paid. Defendants deny the remaining allegations set forth in Paragraph 37 of the Complaint.

38.     Fleetgistics required McCoy to pay for vehicle insurance coverage, and to pay to use and maintain his own vehicle to make deliveries for Fleetgistics.

**ANSWER:**     Defendant Scriptfleet admits that, consistent with the terms of the parties' written agreement, McCoy was responsible for all costs associated with his operation and the transportation services he provided for customers, including the cost of the delivery vehicle(s) necessary for performance of the contracted services, as well as the related costs of vehicle

insurance, maintenance and operation (including fuel).   Defendants deny the remaining allegations set forth in Paragraph 38 of the Complaint.

39.     Fleetgistics also deducted amounts from each of Plaintiff McCoy's paychecks for uniform rentals, insurance, and the rental of a scanner, all of which Fleetgistics required its drivers to obtain from it, and to maintain at the drivers' own expense.

**ANSWER:**     Defendant Scriptfleet admits that McCoy was responsible for all costs associated with his operation and the transportation services he provided for customers, including the cost of any communication device(s) and/or scanner(s), insurance and any apparel worn by McCoy or his subcontractors and/or employees.  Defendant Scriptfleet further admits that McCoy had no obligation to lease or purchase a scanner or other communications equipment from Scriptfleet and that, to the extent McCoy chose to do so, he did so voluntarily and in exchange for payment at fair market value.  Defendant Scriptfleet further admits that, to the extent Scriptfleet deducted any amount from settlement monies owed to McCoy, McCoy directed Scriptfleet to perform the deductions and specifically authorized the deductions in writing.  Defendants deny the remaining allegations set forth in Paragraph 39 of the Complaint.

40.     Plaintiff McCoy regularly worked for Fleetgistics 80 hours per week, or more. He was never paid overtime premium pay.

**ANSWER:**     Defendant Scriptfleet admits that McCoy was not paid 'overtime premium pay' in connection with the contract services Scriptfleet arranged and McCoy performed for customers.   Defendants deny the remaining allegations set forth in Paragraph 40 of the Complaint.

41.     Plaintiff McCoy has consented to join this action and has completed a written consent form, a copy of which is attached as **Exhibit C** to this Amended Class Action Complaint.

**ANSWER:**     Defendants admit that Exhibit C to the Complaint purports to be a written consent form executed by McCoy.  Defendants lack knowledge or information sufficient to form

-13-

a belief as to the truth of the remaining allegations set forth in Paragraph 41 of the Complaint and therefore deny all remaining allegations set forth in Paragraph 41 of the Complaint.

### *Plaintiff Joe Wallace*

42.     Plaintiff Joe Wallace ("Wallace") is an individual residing in Memphis, Indiana. He worked for Fleetgistics' Scriptfleet division as a driver delivering prescription medications to nursing homes from approximately Fall 2008 until 2009 and again from approximately June or July 2010 until approximately August 9, 2012.

**ANSWER:**     Defendant Scriptfleet admits that it is a third party logistics company in the business of arranging transportation and delivery services on behalf of customers in the pharmaceutical/healthcare industry; that Scriptfleet entered into an independent contractor relationship with Wallace, which was memorialized in a written agreement; that Scriptfleet contracted transportation and delivery services it arranged to Wallace for performance of the services on behalf of the customer; and that the services contracted to Wallace included transportation and delivery services performed in Kentucky. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations set forth in Paragraph 42 of the Complaint and therefore deny all remaining allegations set forth in Paragraph 42 of the Complaint.

43.     Wallace made his deliveries primarily from a pharmacy in Louisville, Kentucky.

**ANSWER:**     Defendants currently lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 43 of the Complaint, and therefore deny any and all allegations set forth in Paragraph 43 of the Complaint.

44.     Fleetgistics did not pay Wallace a premium when he worked in excess of 40 hours in a workweek.

**ANSWER:**     Defendant Scriptfleet admits that the amounts it paid for Wallace's services were not calculated based on the number of hours involved in performing the services

and, therefore, admits that no such 'premium' was paid. Defendants deny the remaining allegations set forth in Paragraph 44 of the Complaint.

45.     Wallace was required to pay for a uniform from Fleetgistics and to wear it while making deliveries for Fleetgistics.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 45 of the Complaint.

46.     Fleetgistics required Wallace to pay for vehicle insurance coverage, and to pay to use and maintain his own vehicle to make deliveries for Fleetgistics.

**ANSWER:**     Defendant Scriptfleet admits that, consistent with the terms of the parties' written agreement, Wallace was responsible for all costs associated with his operation and the transportation services he provided for customers, including the cost of the delivery vehicle(s) necessary for performance of the contracted services, as well as the related costs of vehicle insurance, maintenance and operation (including fuel). Defendants deny the remaining allegations set forth in Paragraph 46 of the Complaint.

47.     Fleetgistics also deducted amounts from each of Plaintiff Wallace's biweekly paychecks for uniform rentals, insurance, and the rental of a scanner, all of which Fleetgistics required its drivers to obtain from it, and to maintain at the drivers' own expense.

**ANSWER:**     Defendant Scriptfleet admits that Wallace was responsible for all costs associated with his operation and the transportation services he provided for customers, including the cost of any communication device(s) and/or scanner(s), insurance and any apparel worn by Wallace or his subcontractors and/or employees. Defendant Scriptfleet further admits that Wallace had no obligation to lease or purchase a scanner or other communications equipment from Scriptfleet and that, to the extent Wallace chose to do so, he did so voluntarily and in exchange for payment at fair market value. Defendant Scriptfleet further admits that, to the extent Scriptfleet deducted any amount from settlement monies owed to Wallace, Wallace

directed Scriptfleet to perform the deductions and specifically authorized the deductions in writing. Defendants deny the remaining allegations set forth in Paragraph 47 of the Complaint.

48.     Plaintiff Wallace regularly worked for Fleetgistics 70 hours a week, or more. He was never paid overtime premium pay.

**ANSWER:**     Defendant Scriptfleet admits that Wallace was not paid 'overtime premium pay' in connection with the contract services Scriptfleet arranged and Wallace performed for customers. Defendants deny the remaining allegations set forth in Paragraph 48 of the Complaint.

49.     Plaintiff Wallace has consented to join this action and has completed a written consent form, a copy of which is attached as **Exhibit D** to this Amended Class Action Complaint.

**ANSWER:**     Defendants admit that Exhibit D to the Complaint purports to be a written consent form executed by Wallace. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 49 of the Complaint and therefore deny all remaining allegations set forth in Paragraph 49 of the Complaint.

### *Plaintiff Lionel Jones*

50.     Plaintiff Lionel Jones ("Jones") is an individual residing in Stratford, Connecticut. He worked for Fleetgistics' Partsfleet division as a driver delivering auto parts to automotive retail stores from approximately Summer 2009 until approximately Summer 2011.

**ANSWER:**     Defendant Partsfleet II admits that it is a third party logistics company in the business of arranging transportation and delivery services on behalf of customers in the automotive industry; that Partsfleet II entered into an independent contractor relationship with Jones, which was memorialized in a written agreement; that Partsfleet II contracted transportation and delivery services it arranged to Jones for performance of the services on behalf of the customer; and that the services contracted to Jones included transportation and delivery services performed in Illinois. Defendants lack knowledge or information sufficient to

-16-

form a belief as to the truth of the remaining allegations set forth in Paragraph 50 of the Complaint and therefore Defendants deny all remaining allegations set forth in Paragraph 50 of the Complaint.

51. Jones made his deliveries primarily from an auto parts store in Bridgeport, Connecticut.

**ANSWER:** Defendants currently lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51 of the Complaint, and therefore deny any and all allegations set forth in Paragraph 51 of the Complaint.

52. Fleetgistics did not pay Jones a premium when he worked in excess of 40 hours in a workweek.

**ANSWER:** Defendant Partsfleet II admits that the amounts it paid for Jones's services were not calculated based on the number of hours involved in performing the services and, therefore, admits that no such 'premium' was paid. Defendants deny the remaining allegations set forth in Paragraph 52 of the Complaint.

53. Fleetgistics required Jones to pay for vehicle insurance coverage, and to pay to use and maintain his own vehicle to make deliveries for Fleetgistics.

**ANSWER:** Defendant Partsfleet II admits that, consistent with the terms of the parties' written agreement, Jones was responsible for all costs associated with his operation and the transportation services he provided for customers, including the cost of the delivery vehicle(s) necessary for performance of the contracted services, as well as the related costs of vehicle insurance, maintenance and operation (including fuel). Defendants deny the remaining allegations set forth in Paragraph 53 of the Complaint.

54. Fleetgistics deducted amounts from each of Jones' weekly paychecks for uniform rentals, insurance, and the rental of a scanner, which Fleetgistics required its drivers to obtain from it, and to maintain at the drivers' own expense.

**ANSWER:** Defendant Partsfleet II admits that Jones was responsible for all costs associated with his operation and the transportation services he provided for customers, including the cost of any communication device(s) and/or scanner(s), insurance and any apparel worn by Jones or his subcontractors and/or employees. Defendant Partsfleet II further admits that Jones had no obligation to lease or purchase a scanner or other communications equipment from Partsfleet II and that, to the extent Jones chose to do so, he did so voluntarily and in exchange for payment at fair market value. Defendant Partsfleet II further admits that, to the extent Partsfleet II deducted any amount from settlement monies owed to Jones, Jones directed Partsfleet II to perform the deductions and specifically authorized the deductions in writing. Defendants deny the remaining allegations set forth in Paragraph 54 of the Complaint.

55. Jones worked over 40 hours per week for one or more weeks since December 21, 2010. He was never paid overtime premium pay.

**ANSWER:** Defendant Partsfleet II admits that Jones was not paid 'overtime premium pay' in connection with the contract services Partsfleet II arranged and Jones performed for customers. Defendants deny the remaining allegations set forth in Paragraph 55 of the Complaint.

56. Plaintiff Jones has consented to join this action and has completed a written consent form, a copy of which is attached as **Exhibit E** to this Amended Class Action Complaint.

**ANSWER:** Defendants admit that Exhibit E to the Complaint purports to be a written consent form executed by Jones. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations set forth in Paragraph 56 of the Complaint and therefore deny all remaining allegations set forth in Paragraph 56 of the Complaint.

-18-

*Defendants*

57.     Defendant Fleetgistics Holdings, Inc. is a corporation organized and existing under the laws of Delaware.

**ANSWER:**     Defendant Fleetgistics Holdings admits the allegations set forth in Paragraph 57 of the Complaint.

58.     Fleetgistics Holdings, Inc. has three divisions: Scriptfleet, Medifleet, and Partsfleet. *See* http://fleetgistics.com (last visited December 11, 2012).

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 58 of the Complaint.

59.     Fleetgistics Holdings, Inc. moves its employees among its divisions.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 59 of the Complaint.

60.     Fleetgistics Holdings, Inc. employs managers who manage drivers from more than one division.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 60 of the Complaint.

61.     Through its own activities in Illinois and those of its agents, subsidiaries and divisions, Fleetgistics Holdings, Inc. has subjected itself to the jurisdiction of the state of Illinois.

**ANSWER:**     Paragraph 61 of the Complaint sets forth conclusions of law to which no response is required.  To the extent that a response is deemed necessary, Defendants deny the allegations set forth in Paragraph 61 of the Complaint.

62.     Defendant Partsfleet, Inc. is a corporation organized and existing under the laws of the state of Florida.  Its principal office is located in St. Louis, Missouri.

**ANSWER:**     Defendant Partsfleet admits that it is a corporation organized and existing under the laws of the state of Florida.  Defendants deny the remaining allegations set forth in Paragraph 62 of the Complaint.

63. Through its own activities in Illinois and through the activities of Partsfleet II, Inc., Partsfleet Inc. has subjected itself to the jurisdiction of the state of Illinois.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 63 of the

Complaint.

64. Defendant Partsfleet II, Inc. is a corporation organized and existing under the laws of the state of Florida. Its principal office is located in St. Louis, Missouri. It is registered to do business in Illinois and retains a registered agent within Illinois.

**ANSWER:** Defendant Partsfleet II admits that it is a corporation organized and

existing under the laws of the state of Florida, that it is registered to do – and does – business in

Illinois, and that it has a registered agent within Illinois. Defendants deny the remaining

allegations set forth in Paragraph 64 of the Complaint.

65. Defendant Scriptfleet, Inc. is a corporation organized and existing under the laws of the state of Florida. Its principal office is located in St. Louis, Missouri. It is registered to do business in Illinois and retains a registered agent within Illinois.

**ANSWER:** Defendant Scriptfleet admits that it is a corporation organized and existing

under the laws of the state of Florida, that it is registered to do – and does – business in Illinois,

and that it has a registered agent within Illinois. Defendants deny the remaining allegations set

forth in Paragraph 65 of the Complaint.

66. Until 2009, Scriptfleet, Inc. was known as Network Express.

**ANSWER:** Defendant Scriptfleet admits that its prior corporate name was Network

Express, Inc., and that it changed its corporate name to Scriptfleet, Inc. on or about October 6,

2009.

67. In this Amended Complaint, "Fleetgistics" refers (unless otherwise stated) to Defendants and all successor, predecessor, subsidiary and related entities to which these allegations pertain.

**ANSWER:** Defendants admit that Plaintiffs refer collectively to all Defendants as

"Fleetgistics" in the Complaint, but deny the accuracy and propriety of the collective reference in

the context of this case, including because it ignores the separate corporate status of each

Defendant.

68.     Defendants, which are subject to FLSA requirements, are employers within the meaning of the FLSA.

**ANSWER:**     With respect to each and every Plaintiff, as well as each individual

Plaintiffs seek to represent in this action, Defendants deny that they are "employers" within the

meaning of the FLSA.

69.     Fleetgistics and Scriptfleet are the employers and joint employers of Plaintiffs Zolkos, McCoy, Wallace and all other Scriptfleet drivers, couriers and delivery drivers across the country.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 69 of the

Complaint.

70.     Fleetgistics and Partsfleet are the employers and joint employers of Plaintiff Kliavets and Jones and all other Partsfleet drivers, couriers and delivery drivers across the country.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 70 of the

Complaint.

## COLLECTIVE ACTION ALLEGATIONS

71.     Plaintiffs sue on behalf of themselves and all other Fleetgistics drivers, couriers and delivery drivers across the country (the "FLSA Collective").  This is an appropriate collective or representative action under 29 U.S.C. § 216(b).

**ANSWER:**     Defendants admit that Plaintiffs purport to bring claims pursuant to the

FLSA on behalf of themselves and "all other Fleetgistics drivers, couriers and delivery drivers

across the country."  Defendants deny they violated the FLSA, or any other law, and deny that

Plaintiffs or other individuals whom Plaintiffs purport to or seek to represent in this action are

entitled to any relief sought in this action.  Defendants deny any and all other remaining

allegations set forth in Paragraph 71 of the Complaint.

-21-

72.     Plaintiffs and the other drivers, couriers and delivery drivers are similarly situated in that they are all subject to Fleetgistics' common plan or practice of designating them as independent contractors (when in fact their work and the extent of control Fleetgistics exerted over them rendered them employees), failing to pay them overtime compensation, requiring them to provide and maintain their own vehicles and fuel, and making unlawful deductions from their paychecks.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 72 of the Complaint.

## CLASS ALLEGATIONS

### The Illinois Class

73.     Plaintiffs Zolkos and Kliavets ("Illinois Plaintiffs") bring the Second and Third Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all persons who work or have worked for Fleetgistics as drivers, couriers or delivery drivers (or in comparable roles with different titles) in Illinois between October 12, 2009 and the date of final judgment in this matter (the "Illinois Class").

**ANSWER:** Defendants admit Plaintiffs Zolkos and Kliavets purport to bring the Second and Third Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and "all persons who work or have worked for Fleetgistics as drivers, couriers or delivery drivers (or in comparable roles with different titles) in Illinois between October 12, 2009 and the date of final judgment in this matter." Defendants deny any and all other remaining allegations set forth in Paragraph 73 of the Complaint.

74.     Excluded from the Illinois Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Illinois Class.

**ANSWER:** Defendants admit that Plaintiffs seek to exclude from the proposed Illinois Class those individuals identified by Paragraph 74 of the Complaint. Defendants deny any and all other remaining allegations set forth in Paragraph 74 of the Complaint.

75. The persons in the Illinois Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the proposed Illinois Class, and therefore deny the same and all allegations set forth in Paragraph 75 of the Complaint.

76. Upon information and belief, there are at least 100 members of the Illinois class.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the proposed Illinois Class, and therefore deny the same and all allegations set forth in Paragraph 76 of the Complaint.

77. Defendants acted or refused to act on grounds generally applicable to the Illinois Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Illinois Class as a whole.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 77 of the Complaint.

78. The Second and Third Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Illinois Class that predominate over any questions solely affecting individual members of the Illinois Class, including but not limited to:

a) whether Defendants violated the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105, the Illinois Wage Payment and Collection Act ("IWPCA"), 820 Ill. Comp. Stat. 115, and supporting Illinois Department of Labor (''IDOL'') regulations, 56 Ill. Admin. Code 210 and 56 Ill. Admin. Code 300, as alleged herein;

-23-

b)      whether Illinois Plaintiffs and the members of the Illinois Class were employees of Defendants pursuant to 820 Ill. Comp. Stat. 105/3(d) and 820 Ill. Comp. Stat. 115/2 and supporting IDOL regulations;

c)      whether Defendants failed and/or refused to pay Illinois Plaintiffs and the Illinois Class for all hours worked;

d)      whether Defendants failed and/or refused to pay Illinois Plaintiffs and the Illinois Class overtime pay for hours worked in excess of 40 hours per workweek;

e)      whether Defendants have had a policy of failing to pay workers for time that they worked;

f)      whether Defendants' policy of failing to pay workers was instituted willfully or in reckless disregard of the law;

g)      whether it was Defendants' policy or practice to make deductions from the wages of Illinois Plaintiffs and the Illinois Class in violation of 820 Ill. Comp. Stat. 115/9 and supporting IDOL regulations;

h)      whether it was Defendants' policy or practice to require Illinois Plaintiffs and the Illinois Class to provide and maintain their own vehicles and fuel in violation of the IMWL, IWPCA and supporting IDOL regulations;

i)      whether it was Defendants' policy or practice to fail to keep true and accurate time and pay records for all hours worked by its employees, and other records required by the IMWL;

j)      what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

k)      whether it was Defendants' policy or practice to fail to comply with the posting and notice requirements of the IMWL;

l)      the nature and extent of class-wide injury and the measure of damages for those injuries.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 78 of the Complaint.

79.     Illinois Plaintiffs' claims are typical of the claims of the Illinois Class. Illinois Plaintiffs and the members of the Illinois Class work or have worked for Fleetgistics and have been subjected to its policy and pattern or practice of misclassifying them as independent contractors and failing to pay overtime wages for hours worked in excess of 40 hours per week.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 79 of the Complaint.

80. Illinois Plaintiffs and the members of the Illinois Class have been subject to Fleetgistics' policy and pattern or practice of making unlawful deductions to their pay. Illinois Plaintiffs and the Illinois Class members enjoy the same statutory rights under the IMWL and IWPCA to be paid for all hours worked, and to be paid overtime wages. Illinois Plaintiffs and the members of the Illinois Class all have sustained similar types of damages as a result of Fleetgistics' failure to comply with the IMWL and IWPCA. Illinois Plaintiffs and the members of the Illinois Class all have been injured in that they have been uncompensated or under-compensated due to Fleetgistics' common policies, practices, and patterns.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 80 of the Complaint.

81. Defendants acted and refused to act on grounds generally applicable to the Illinois Class, thereby making declaratory relief with respect to the Illinois Class appropriate.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 81 of the Complaint.

82. Illinois Plaintiffs will fairly and adequately represent and protect the interests of the Illinois Class. Illinois Plaintiffs understand that, as the class representatives, they assume a fiduciary responsibility to the Illinois Class to represent its interests fairly and adequately. Illinois Plaintiffs recognize that as the class representatives, they must represent and consider the interests of the Illinois Class just as they would represent and consider their own interests. Illinois Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over those of the Illinois Class. Illinois Plaintiffs recognize that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Illinois Class. Illinois Plaintiffs understand that in order to provide adequate representation, they must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in their possession, and testify, if required, in a deposition and in trial.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 of the Complaint, and therefore deny same and all allegations set forth in Paragraph 82 of the Complaint.

83. Illinois Plaintiffs have retained counsel competent and experienced in complex class action employment litigation.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83, and therefore deny same and all allegations set forth in Paragraph 83 of the Complaint.

84.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the Illinois Class have been damaged and are entitled to recovery as a result of Fleetgistics' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the Illinois Class are not *de minimis,* such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Fleetgistics' practices.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 84 of the Complaint.

## The New York Class

85.     Plaintiff McCoy ("New York Plaintiff") brings the Fourth, Fifth and Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all persons who work or have worked for Fleetgistics as drivers, couriers or delivery drivers (or in comparable roles with different titles) in New York between October 12, 2006 and the date of final judgment in this matter (the "New York Class").

**ANSWER:** Defendants admit that Plaintiff McCoy purports to bring the Fourth, Fifth and Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and "all persons who work or have worked for Fleetgistics as drivers, couriers or delivery drivers (or in comparable roles with different titles) in New York between October 12, 2006 and the date of final judgment in this matter."  Defendants deny any and all other remaining allegations set forth in Paragraph 85 of the Complaint.

86.     Excluded from the New York Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is

assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the New York Class.

**ANSWER:** Defendants admit that Plaintiff McCoy purports to seek to exclude from the proposed New York Class those individuals identified by Paragraph 86 of the Complaint. Defendants deny any and all other remaining allegations set forth in Paragraph 86 of the Complaint.

87. The persons in the New York Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the proposed New York Class, and therefore deny the same and all allegations set forth in Paragraph 87 of the Complaint.

88. Upon information and belief, the size of the New York class is at least 100 workers.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the proposed New York Class, and therefore deny the same and all allegations set forth in Paragraph 88 of the Complaint.

89. Defendants acted or refused to act on grounds generally applicable to the New York Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the New York Class as a whole.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 89 of the Complaint.

90. The Fourth, Fifth and Sixth Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the New York Class that predominate over any questions solely affecting individual members of the New York Class, including but not limited to:

(a)    whether Defendants violated New York Labor Law ("NYLL"), Articles 6 and 19, and the supporting New York State Department of Labor regulations;

(b)     whether Defendants failed and/or refused to compensate New York Plaintiff and the New York Class members for all hours worked;

(c)     whether Defendants [sic] and/or refused to pay New York Plaintiff and the New York Class members overtime pay for hours worked in excess of 40 hours per workweek;

(d)     whether Defendants failed to keep true and accurate time and pay records for all hours worked by New York Plaintiff and the New York Class, and other records required by the NYLL;

(e)     whether it was Defendants' policy or practice to make unlawful deductions from the wages of New York Plaintiff and the New York Class;

(f)     whether it was Defendants' policy or practice to fail to furnish New York Plaintiff and the New York Class with an accurate statement of wages, hours worked, rates paid, and gross wages as required by the NYLL;

(g)     whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(h)     the nature and extent of class-wide injury and the measure of damages for those injuries.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 90 of the Complaint.

91.     New York Plaintiff's claims are typical of the claims of the New York Class. New York Plaintiff and the members of the New York Class work or have worked for Fleetgistics and have been subjected to its policy and pattern or practice of misclassifying them as independent contractors and failing to pay overtime wages for hours worked in excess of 40 hours per week.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 91 of the Complaint.

92.     New York Plaintiff and the members of the New York Class have been subject to Fleetgistics' policy and pattern or practice of making unlawful deductions to their pay.  New York Plaintiff and the New York Class members enjoy the same statutory rights under the NYLL to be paid for all hours worked, and to be paid overtime wages.  New York Plaintiff and the members of the New York Class all have sustained similar types of damages as a result of Fleegistics' [sic] failure to comply with the NYLL.  New York Plaintiff and the members of the New York Class all have been injured in that they have been uncompensated or under-compensated due to Fleegistics' common policies, practices, and patterns.

-28-

**ANSWER:** Defendants deny the allegations set forth in Paragraph 92 of the Complaint.

93.     Defendants acted and refused to act on grounds generally applicable to the New York Class, thereby making declaratory relief with respect to the New York Class appropriate.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 93 of the Complaint.

94.     New York Plaintiff will fairly and adequately represent and protect the interests of the New York Class. New York Plaintiff understands that, as the class representative, he assumes a fiduciary responsibility to the New York Class to represent its interests fairly and adequately. New York Plaintiff recognizes that as the class representative, he must represent and consider the interests of the New York Class just as he would represent and consider his own interests. New York Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the New York Class. New York Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the New York Class. New York Plaintiff understands that in order to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in his possession, and testify, if required, in a deposition and at trial.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 94 of the Complaint, and therefore deny same and all allegations in Paragraph 94 of the Complaint.

95.     New York Plaintiff has retained counsel competent and experienced in complex class action employment litigation.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 95 of the Complaint, and therefore deny same and all allegations set forth in Paragraph 95 of the Complaint.

96.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the New York Class have been damaged and are entitled to recovery as a result of Fleetgistics' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual

members of the New York Class are not *de minimis,* such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Fleetgistics' practices.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 96 of the Complaint.

### The Kentucky Class

97. Plaintiff Wallace ("Kentucky Plaintiff") brings the Seventh and Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all persons who work or have worked for Fleetgistics as drivers, couriers or delivery drivers (or in comparable roles with different titles) in Kentucky between October 12, 2007 and the date of final judgment in this matter (the "Kentucky Class").

**ANSWER:** Defendants admit that Wallace purports to bring the Seventh and Eighth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and "all persons who work or have worked for Fleetgistics as drivers, couriers or delivery drivers (or in comparable roles with different titles) in Kentucky between October 12, 2007 and the date of final judgment in this matter. Defendants deny any and all other remaining allegations set forth in Paragraph 97 of the Complaint.

98. Excluded from the Kentucky Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Kentucky Class.

**ANSWER:** Defendants admit that Plaintiff Wallace purports to seek to exclude from the proposed Kentucky Class those individuals identified by Paragraph 98 of the Complaint. Defendants deny any and all other remaining allegations set forth in Paragraph 98 of the Complaint.

99. The persons in the Kentucky Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to

-30-

Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the proposed Kentucky Class, and therefore deny the same and all allegations set forth in Paragraph 99 of the Complaint.

100. Upon information and belief, the size of the Kentucky Class is at least 100 workers.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the proposed Kentucky Class, and therefore deny the same and all allegations set forth in Paragraph 100 of the Complaint.

101. Defendants acted or refused to act on grounds generally applicable to the Kentucky Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Kentucky Class as a whole.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 101 of the Complaint.

102. The Seventh and Eighth Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Kentucky Class that predominate over any questions solely affecting individual members of the Kentucky Class, including but not limited to:

(a) whether Defendants failed to keep true and accurate time records for all hours worked by the Kentucky Plaintiff and the Kentucky Class;

(b) what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

(c) whether Kentucky Plaintiff and the members of the Kentucky Class were employees of Defendants pursuant to Ky. Rev. Stat. § 337.010;

(d) whether it was Defendants' policy or practice to make deductions from the wages of Kentucky Plaintiff and the Kentucky Class in violation of Ky. Rev. Stat.§§ 337.010 *et seq.;*

(e) whether it was Defendants' policy or practice to fail to keep true and accurate time records for all hours worked by the Kentucky Plaintiff and the Kentucky Class;

-31-

(f) whether Defendants failed and/or refused to pay the Kentucky Plaintiffs and the Kentucky Class overtime pay for hours worked in excess of 40 hours per workweek within the meaning of Ky. Rev. Stat.§§ 337.010 et seq., and the supporting Kentucky State Department of Labor Regulations, 803 Ky. Admin. Regs. 1:075;

(g) whether Defendants failed and/or refused to pay the Kentucky Plaintiffs and the Kentucky Class overtime pay for hours worked on a consecutive seventh day in a workweek within the meaning of Ky. Rev. Stat.§§ 337.010 et seq., and the supporting Kentucky State Department of Labor Regulations, 803 Ky. Admin. Regs. 1:075;

(h) the nature and extent of Kentucky Class-wide injury and the appropriate measure of damages for the Kentucky Class;

(i) whether Defendants have a policy of misclassifying workers as independent contractors exempt from coverage of the overtime provisions of the FLSA and Kentucky Wage Laws; and

(j) whether Defendants' policy of misclassifying workers was done willfully or with reckless disregard of the statute.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 102 of the Complaint.

103. The claims of Kentucky Plaintiff are typical of the claims of the Kentucky Class he seeks to represent. Kentucky Plaintiff and the Kentucky Class members work or have worked for Defendants and have been subjected to their policy and pattern or practice of failing to pay overtime wages for hours worked in excess of 40 hours per week and on the seventh consecutive work day in a workweek. Defendants acted and refused to act on grounds generally applicable to the Kentucky Class, thereby making declaratory relief with respect to the Kentucky Class appropriate.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 103 of the Complaint.

104. Kentucky Plaintiff will fairly and adequately represent and protect the interests of the Kentucky Class. Kentucky Plaintiff understands that, as a class representative, he assumes a fiduciary responsibility to the Kentucky Class to represent its interests fairly and adequately. Kentucky Plaintiff recognizes that as a class representative, he must represent and consider the interests of the Kentucky Class just as he would represent and consider his own interests. Kentucky Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the Kentucky Class. Kentucky Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Kentucky Class. Kentucky

-32-

Plaintiff understands that in order to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in his possession, and testify, if required, in a deposition and in trial.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to

the truth of the allegations set forth in Paragraph 104 of the Complaint, and therefore deny same

and all allegations set forth in Paragraph 104 of the Complaint.

105.    Kentucky Plaintiff has retained counsel competent and experienced in complex class action employment litigation.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to

the truth of the allegations set forth in Paragraph 105 of the Complaint, and therefore deny same

and all allegations set forth in Paragraph 105 of the Complaint.

106.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The members of the Kentucky Class have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the Kentucky Class are not *de minimis,* such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 106 of the

Complaint.

### The Connecticut Class

107.    Plaintiff Jones ("Connecticut Plaintiff") brings the Ninth, Tenth and Eleventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all persons who work or have worked for Fleetgistics as drivers, couriers or delivery drivers (or in comparable roles with different titles) in Connecticut between October 12, 2010 and the date of final judgment in this matter (the "Connecticut Class").

**ANSWER:**    Defendants admit that Plaintiff Jones purports to bring the Ninth, Tenth

and Eleventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure, on behalf

of himself and "all persons who work or have worked for Fleetgistics as drivers, couriers or delivery drivers (or in comparable roles with different titles) in Connecticut between October 12, 2010 and the date of final judgment in this matter." Defendants deny any and all other remaining allegations set forth in Paragraph 107 of the Complaint.

108.    Excluded from the Connecticut Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Connecticut Class.

**ANSWER:**    Defendants admit that Plaintiff Jones purports to seek to exclude from the proposed Connecticut Class those individuals identified by Paragraph 108 of the Complaint. Defendants deny any and all other remaining allegations set forth in Paragraph 108 of the Complaint.

109.    The persons in the Connecticut Class identified above are so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Plaintiffs, the facts on which the calculation of that number can be based are presently within the sole control of Defendants.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the proposed Connecticut Class, and therefore deny the same and all allegations set forth in Paragraph 109 of the Complaint.

110.    Upon information and belief, there are at least 100 members of the Connecticut class.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations regarding the proposed Connecticut Class, and therefore deny the same and all allegations set forth in Paragraph 110 of the Complaint.

111.    Defendants acted or refused to act on grounds generally applicable to the Connecticut Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Connecticut Class as a whole.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 111 of the Complaint.

112.    The Ninth, Tenth and Eleventh Causes of Action are properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the Connecticut Class that predominate over any questions solely affecting individual members of the Connecticut Class, including but not limited to:

(a)    whether Defendants violated Connecticut's Wage Payment Laws, Conn. Gen. Stat. §§ 31-58 *et seq.,* and supporting Connecticut Department of Labor ("CDOL") regulations as alleged herein;

(b)    whether Connecticut Plaintiff and the members of the Connecticut Class were employees of Defendants pursuant to Conn. Gen. Stat. §§ 31-58(f), 31-71(a)(2), 31-76 (b)(3) and supporting CDOL regulations;

(c)    whether Defendants failed and/or refused to pay Connecticut Plaintiff and the Connecticut Class for all hours worked;

(d)    whether Defendants failed and/or refused to pay Connecticut Plaintiff and the Connecticut Class overtime pay for hours worked in excess of 40 hours per workweek;

(e)    whether Defendants have had a policy of failing to pay workers for time that they worked;

(f)    whether Defendants' policy of failing to pay workers was instituted willfully or in reckless disregard of the law;

(g)    whether it was Defendants' policy or practice to make deductions from the wages of Connecticut Plaintiffs and the Connecticut Class in violation of Conn. Gen. Stat.§§ 31-71(e), 31-73 and supporting CDOL regulations;

(h)    whether it was Defendants' policy or practice to require Connecticut Plaintiffs and the Connecticut Class to provide and maintain their own vehicles and fuel in violation of Conn. Gen. Stat. §§ 31-71(e), 31-73 and supporting CDOL regulations;

(i)    whether it was Defendants' policy or practice to fail to keep true and accurate time and pay records for all hours worked by its employees, and other records required by Conn. Gen. Stat. §§ 31-66, 31-71(f) and supporting CDOL regulations;

(j)    what proof of hours worked is sufficient where an employer fails in its duty to maintain true and accurate time records;

-35-

    (k)      whether it was Defendants' policy or practice to fail to comply with the posting and notice requirements of Conn. Gen. Stat.§§ 31-66, 31-71(f) and supporting CDOL regulations;

    (l)      the nature and extent of class-wide injury and the measure of damages for those injuries.

       **ANSWER:**    Defendants deny the allegations set forth in Paragraph 112 of the Complaint.

      113.    Connecticut Plaintiff's claims are typical of the claims of the Connecticut Class. Connecticut Plaintiff and the members of the Connecticut Class work or have worked for Fleetgistics and have been subjected to its policy and pattern or practice of misclassifying them as independent contractors and failing to pay overtime wages for hours worked in excess of 40 hours per week.

       **ANSWER:**    Defendants deny the allegations set forth in Paragraph 113 of the Complaint.

      114.    Connecticut Plaintiff and the members of the Connecticut Class have been subject to Fleetgistics' policy and pattern or practice of making unlawful deductions to their pay. Connecticut Plaintiff and the Connecticut Class members enjoy the same statutory rights under Conn. Gen. Stat. §§ 31-58 *et seq.* to be paid for all hours worked, and to be paid overtime wages. Connecticut Plaintiff and the members of the Connecticut Class all have sustained similar types of damages as a result of Fleegistics' [sic] failure to comply with Conn. Gen. Stat. §§ 31-58 *et seq.* Connecticut Plaintiff and the members of the Connecticut Class all have been injured in that they have been uncompensated or under-compensated due to Fleegistics' common policies, practices, and patterns.

       **ANSWER:**    Defendants deny the allegations set forth in Paragraph 114 of the Complaint.

      115.    Defendants acted and refused to act on grounds generally applicable to the Connecticut Class, thereby making declaratory relief with respect to the Connecticut Class appropriate.

       **ANSWER:**    Defendants deny the allegations set forth in Paragraph 115 of the Complaint.

      116.    Connecticut Plaintiff will fairly and adequately represent and protect the interests of the Connecticut Class. Connecticut Plaintiff understands that, as the class representative, he assumes a fiduciary responsibility to the Connecticut Class to represent its interests fairly and

adequately. Connecticut Plaintiff recognizes that as the class representative, he must represent and consider the interests of the Connecticut Class just as he would represent and consider his own interests. Connecticut Plaintiff understands that in decisions regarding the conduct of the litigation and its possible settlement, he must not favor his own interests over those of the Connecticut Class. Connecticut Plaintiff recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the Connecticut Class. Connecticut Plaintiff understands that in order to provide adequate representation, he must remain informed of developments in the litigation, cooperate with class counsel by providing them with information and any relevant documentary material in his possession, and testify, if required, in a deposition and in trial.

> **ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 116 of the Complaint, and therefore deny same and all allegations set forth in Paragraph 116 of the Complaint.

117.    Connecticut Plaintiff has retained counsel competent and experienced in complex class action employment litigation.

> **ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 117 of the Complaint, and therefore deny same and all allegations set forth in Paragraph 117 of the Complaint.

118.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The members of the Connecticut Class have been damaged and are entitled to recovery as a result of Fleetgistics' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the Connecticut Class are not *de minimis,* such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Fleetgistics' practices.

> **ANSWER:** Defendants deny the allegations set forth in Paragraph 118 of the Complaint.

## FACTS

119.    At all relevant times, Plaintiffs and other members of the Illinois, New York, Kentucky and Connecticut Classes and the FLSA Collective (collectively "Class Members") worked as drivers for Fleetgistics.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 119 of the Complaint.

120. Fleetgistics boasts a network of delivery operations in over 80 cities and 30 states. *See* http://fleetgistics.com/about.htm. (last visited December 11, 2012).

**ANSWER:** Defendants Scriptfleet, Partsfleet and Partsfleet II each individually admits that it is in the business of providing third party logistics solutions for customers in need of transportation and delivery services; that it is a wholly owned subsidiary of Fleetgistics Holdings; that it has used the "Fleetgistics" name in some form (often in combination with the names "Scriptfleet" and "Partsfleet") to market its services in some capacity during the periods relevant in this action; and that such marketing efforts have at times referenced the geographic scope of the network of independent transportation providers to which it contracts delivery services. Defendants deny any and all other remaining allegations set forth in Paragraph 120 of the Complaint.

121. Fleetgistics' business is to provide same-day delivery and logistics services to its clients.

**ANSWER:** Defendants Scriptfleet, Partsfleet and Partsfleet II each individually admits that it is in the business of providing third party logistics solutions for customers in need of transportation and delivery services, including same-delivery logistics. Defendants deny any and all other remaining allegations set forth in Paragraph 121 of the Complaint.

122. In order to conduct this business, Fleetgistics engaged drivers, couriers and delivery drivers, such as Plaintiffs and the Class Members, to pick up the items to be delivered and deliver them to their designated recipients.

**ANSWER:** Defendants Scriptfleet, Partsfleet and Partsfleet II each individually admits that it is in the business of providing third party logistics solutions for customers in need of transportation and delivery services, and that it contracts with separately established,

-38-

independent businesses, including sole proprietor owner operators, to perform the transportation services Defendants arrange. Defendants deny any and all other remaining allegations set forth in Paragraph 122 of the Complaint.

123. Plaintiffs and the Class Members shared common job duties – performing deliveries for Fleetgistics' customers.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 123 of the Complaint.

124. Fleetgistics designated Plaintiffs and the Class Members as independent contractors.

**ANSWER:** Defendants Scriptfleet, Partsfleet and Partsfleet II each individually admits that it enter into contractual relationships with separately established, independent businesses, including sole proprietor owner-operators, to perform the transportation services Defendants arrange; and that Scriptfleet, Partsfleet and Partsfleet II enters into written agreements with such businesses to memorialize, *inter alia*, the parties' intent to create an independent contractor relationship. Defendants deny any and all other remaining allegations set forth in Paragraph 124 of the Complaint.

125. Upon information and belief, the decision to classify Plaintiffs and the Class Members as independent contractors was made centrally, and not on a person-by-person basis.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 125 of the Complaint.

126. Fleetgistics controlled and directed the performance of Plaintiffs' and the Class Members' work.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 126 of the Complaint.

127. Plaintiffs and the Class Members were not in an independently established trade, occupation, profession or business.

-39-

**ANSWER:** Defendants deny the allegations set forth in Paragraph 127 of the Complaint.

128. Plaintiffs and the Class Members were not in business for themselves, but rather depended on Fleetgistics' business for the opportunity to render services to the long-term care pharmacies, nursing homes and auto parts stores they served.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 128 of the Complaint.

129. Plaintiffs had no opportunity for profit or loss without Fleetgistics.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 129 of the Complaint.

130. Plaintiffs and the Class Members could not deal directly with Fleetgistics' clients to offer their delivery services.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 130 of the Complaint.

131. Plaintiffs and the Class Members were required to work for Fleetgistics to provide delivery services.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 131 of the Complaint.

132. Plaintiffs' and the Class Members' relationship with Fleetgistics was neither temporary nor sporadic.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 132 of the Complaint.

133. Plaintiff Zolkos worked full-time for Fleetgistics for approximately 2½ (two and a half) years.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 133 of the Complaint.

-40-

134.    Plaintiff Kliavets worked full-time for Fleetgistics for almost 4 (four) years.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 134 of the Complaint.

135.    Plaintiff McCoy worked full-time for Fleetgistics for approximately 9 (nine) months.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 135 of the Complaint.

136.    Plaintiff Wallace worked for Fleetgistics for approximately 3 (three) years.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 136 of the Complaint.

137.    Plaintiff Jones worked for Fleetgistics for approximately 2 (two) years.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 137 of the Complaint.

138.    Plaintiffs and the Class Members were required to adhere to a particular delivery schedule and could not come and go as they pleased.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 138 of the Complaint.

139.    Plaintiff Zolkos worked a regular schedule for Fleetgistics' Scriptfleet division six days a week, Monday through Saturday. He worked a 1:00 p.m. route Monday through Saturday, a 1:00 a.m. route Mondays, Tuesday, Thursdays and Saturdays, and a 10:00 p.m. route Wednesdays and Fridays.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 139 of the Complaint.

140.    Plaintiff Kliavets worked a regular schedule for Fleetgistics' Partsfleet division seven days a week from the beginning of his employment until approximately November 2010. During this time he worked from approximately 8:15 a.m. until approximately 6:30 p.m. Mondays through Fridays, and from approximately 8:15 a.m. until approximately 3:30 p.m. Saturdays and Sundays.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 140 of the Complaint.

141. From approximately November 2010 to approximately November 2011, Plaintiff Kliavets worked a regular schedule for Fleetgistics five days a week. During this time he worked from approximately 8:15 a.m. until approximately 6:30 p.m. Mondays through Fridays.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 141 of the Complaint.

142. Plaintiff McCoy worked a regular schedule for Fleetgistics' Scriptfleet division, Mondays through Fridays from 12:15 p.m. to at least 11:30 p.m., and Saturdays and Sundays from 2:00 p.m. to at least 8:00 p.m.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 142 of the Complaint.

143. Plaintiff Wallace worked a regular schedule for Fleetgistics' Scriptfleet division five or six days a week, from 6:00 p.m. to 6:00 a.m. He was regularly required to work up to four hours a day in addition to this twelve-hour shift.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 143 of the Complaint.

144. Plaintiff Jones worked a regular schedule for Fleetgistics' Partsfleet division five days a week, from 10:30 a.m. until as late as 8:00 p.m. Mondays through Fridays.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 144 of the Complaint.

145. In order to perform their jobs, Plaintiffs and the Class Members used Fleetgistics' equipment, including a scanner and other necessary equipment.

**ANSWER:** Defendant Scriptfleet and Defendant Partsfleet II each individually admits that Plaintiffs had no obligation to lease or purchase a scanner and/or any other form of communications equipment from Defendant Scriptfleet or Defendant Partsfleet II, and that to the extent any Plaintiff chose to do so, he did so voluntarily and in exchange for payment at fair

-42-

market value. Defendants deny the remaining allegations set forth in Paragraph 145 of the Complaint.

**ANSWER:**

146. Plaintiffs and the Class Members were required to use their own vehicles for their work.

**ANSWER:** Defendants Scriptfleet and Partsfleet II each independently admits that, consistent with the terms of the written agreements entered into with the applicable Plaintiffs, Plaintiffs were required to furnish and pay for the cost of all equipment used to perform the contracted services, including all necessary delivery vehicles. Defendants deny any and all other remaining allegations set forth in Paragraph 146 of the Complaint.

147. Plaintiffs and the Class Members were not reimbursed for maintaining their vehicles or for most of their gasoline expenses, or for other legitimate business expenses, including cellular telephone use.

**ANSWER:** Defendants Scriptfleet and Partsfleet II each separately and individually admits that, consistent with the terms of the written agreements entered into with the applicable Plaintiffs, Plaintiffs furnished and paid for the cost of all equipment used to perform the contracted services, including all delivery vehicles and communication devices used to perform the services. Defendants deny any and all other remaining allegations set forth in Paragraph 147 of the Complaint.

148. Fleetgistics paid Plaintiffs and Class Members a gasoline premium, which covered only a small portion of their gasoline costs.

**ANSWER:** Defendants Scriptfleet and Partsfleet II each separately and individually admits that it paid Plaintiffs and other contractors a fuel surcharge under certain circumstances in accordance with the contractual terms applicable to the specific contractual relationship. Defendants lack knowledge or information sufficient to form a belief as to the truth of the other

allegations set forth in Paragraph 148 of the Complaint, and therefore deny any and all other remaining allegations set forth in Paragraph 148 of the Complaint.

149.    Fleetgistics maintained a policy of requiring Plaintiffs and Class Members to rent or purchase a uniform from Fleetgistics, and to wear the uniform when picking up and making deliveries.  Fleetgistics deducted an amount from Plaintiffs' and Class Members' pay for the uniforms.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 149 of the Complaint.

150.    Fleetgistics did not pay New York Plaintiff and members of the New York Class spread-of-hours pay for shifts worked of 10 hours or more.

**ANSWER:**    Defendant Scriptfleet admits that it paid McCoy as an independent contractor, not an employee, that the amounts it paid for McCoy's services were not calculated based on the number of hours involved in performing the services, that it, therefore, did not make "spread-of-hours" payments to McCoy, that it had no contractual or other obligation to make such payments to McCoy or any other contractor McCoy purports to represent, and that it did not, in fact, make any "spread-of-hours" payments to other contractors McCoy purports to or seeks to represent in this action.  Defendants deny any and all other remaining allegations set forth in Paragraph 150 of the Complaint.

151.    Fleetgistics did not pay Kentucky Plaintiff and the members of the Kentucky Class an overtime premium for hours worked on the seventh consecutive day in a workweek.

**ANSWER:**    Defendant Scriptfleet admits that it paid Wallace as an independent contractor, not an employee, that it did not pay Wallace "an overtime premium for hours worked on the seventh consecutive day in a workweek", that it had no contractual or other obligation to make such payments to Wallace or any other contractor Wallace purports to represent, and that it did not, in fact, pay such an overtime premium to other contractors Wallace purports to or seeks

to represent in this action. Defendants deny any and all other remaining allegations set forth in Paragraph 151 of the Complaint.

152. Fleetgistics required Plaintiffs and Class Members to use a specialized scanner, which they were required to rent from Fleetgistics.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 152 of the Complaint.

153. Fleetgistics deducted an amount from Plaintiffs' and Class Members' pay for the specialized scanner.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 153 of the Complaint.

154. Fleetgistics required Plaintiffs and Class Members to obtain specialized occupational insurance from Fleetgistics.

**ANSWER:** As used in this Paragraph, the term "specialized" is vague, unclear and unintelligible, making it impossible for Defendants to understand the factual allegations contained in Paragraph 154 of the Complaint. Consequently, Defendants lack the knowledge, information and understanding sufficient to form a belief as to the truth of the allegations in Paragraph 154 of the Complaint, and therefore deny any and all other remaining allegations set forth in Paragraph 154 of the Complaint.

155. Fleetgistics deducted an amount from Plaintiffs' and Class Members' pay for the occupational insurance.

**ANSWER:** Defendants Scriptfleet and Partsfleet II each, respectively, admits that in order to contract with the respective Defendant for the right to perform contracted services arranged by the Defendant, the Plaintiffs had to carry and provide proof of worker's compensation or occupational accident insurance, the latter of which Plaintiffs could purchase from a source arranged by the Defendants. Defendants Scriptfleet and Partsfleet II each,

respectively, further admit that the Plaintiffs who chose to purchase occupational accident from the source arranged by Defendants also authorized and directed Defendants to deduct the cost of the insurance policy from settlement monies Defendants owed to Plaintiffs for services rendered. Defendants deny any and all other remaining allegations set forth in Paragraph 155 of the Complaint.

156.    Plaintiffs' and Class Members' work was performed for the benefit of Fleetgistics, in the normal course of Fleetgistics' business and was integrated into Fleetgistics' business.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 156 of the Complaint.

157.    The work performed by Plaintiffs and the Class Members required little or no skill.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 157 of the Complaint.

158.    Plaintiffs' and Class Members' duties did not include managerial responsibilities or the exercise of independent judgment.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 158 of the Complaint.

159.    Plaintiffs and Class Members were not engaged in making sales.

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 159 of the Complaint, and therefore deny any and all allegations set forth in Paragraph 159 of the Complaint.

160.    Plaintiffs and Class Members did not drive vehicles weighing over 10,000 pounds.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 160 of the Complaint.

161.    Fleetgistics exerted a great deal of control over Plaintiffs' and Class Members' work.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 161 of the Complaint.

162.    Fleetgistics required Plaintiffs and Class Members to arrive at their designated location to pick up items for delivery at a certain time, and to wait at the location if the items intended for delivery were not ready.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 162 of the Complaint.

163.    Fleetgistics required Plaintiffs and Class Members to check in for work using their scanners at a certain time before each route time.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 163 of the Complaint.

164.    Fleetgistics' violations have been willful and intentional in that it has known all along that Plaintiffs and other drivers, couriers and delivery drivers were employees, worked more than forty hours per week, and the requirements of the law.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 164 of the Complaint.

165.    Fleetgistics has settled other similar lawsuits but has not changed its practices.

**ANSWER:**    As used in this Paragraph, the terms "similar" and "practices" are vague, unclear and unintelligible, making it impossible for Defendants to understand the factual allegations contained in Paragraph 165 of the Complaint.  Consequently, Defendants lack the knowledge, information and understanding sufficient to form a belief as to the truth of the allegations in Paragraph 165 of the Complaint, and therefore deny all allegations set forth in Paragraph 165 of the Complaint.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act, 29 U.S.C. §§ 201** *et seq.*
**On behalf of Plaintiffs and the FLSA Collective**

166.    Plaintiffs, on behalf of themselves and all FLSA Collective members, re-allege and incorporate by reference all preceding paragraphs as if they were set forth again herein.

**ANSWER:**    Defendants reassert and incorporate herein by reference the answers to the preceding Paragraphs of the Complaint, as if fully restated herein.

167.    Defendants have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Amended Collective Action Complaint.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 167 of the Complaint.

168.    At all times relevant, Plaintiffs and the FLSA Collective members were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a), and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

**ANSWER:**    Paragraph 168 of the Complaint sets forth conclusions of law to which no response is required.  To the extent that a response is deemed necessary, Defendants deny the allegations set forth in Paragraph 168 of the Complaint.  Defendants further specifically deny that Plaintiffs or other individuals whom Plaintiffs purport to or seek to represent in this action were employees of any Defendant under any statute, including the FLSA.

169.    At all times relevant, Plaintiffs and the FLSA Collective members were or have been employees within the meaning of 29 U.S.C. §§ 203(e), (m) and 206(a).

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 169 of the Complaint.

170.    At all times relevant, Defendants have been employers of Plaintiffs and the FLSA Collective members, engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

**ANSWER:** Paragraph 170 of the Complaint sets forth conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendants deny the allegations set forth in Paragraph 170 of the Complaint. Defendants further specifically deny that Plaintiffs or other individuals whom Plaintiffs purport to or seek to represent in this action were employees of any Defendant under any statute, including the FLSA.

171. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 210 et seq., and supporting federal regulations apply to Defendants and protect Plaintiffs and the FLSA Collective members.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 171 of the Complaint.

172. At all times relevant, Defendants have been an enterprise within the meaning of 29 U.S.C. § 203(s).

**ANSWER:** Paragraph 172 of the Complaint sets forth conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendants deny the allegations set forth in Paragraph 172 of the Complaint.

173. Defendants have failed to pay Plaintiffs and the FLSA Collective members overtime wages for hours that they worked in excess of 40 hours in a workweek.

**ANSWER:** Defendant Scriptfleet and Defendant Partsfleet II each admits they have not paid Plaintiffs "overtime wages" as defined under the FLSA, and deny any legal obligation to do so. Defendants deny any and all remaining allegations set forth in Paragraph 173 of the Complaint.

174. Each Defendant directly and indirectly acted in the interest of an employer toward Plaintiffs, Collective Members, and Class Members at all material times including, without limitation, controlling the terms of employment and compensation of Plaintiffs, Collective Members, and Class Members.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 174 of the Complaint.

-49-

175.    Defendants were each joint employers of Plaintiffs, Collective Members, and Class Members because each acted directly or indirectly in the interest of the other in relation to Plaintiffs, Collective Members, and Class Members.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 175 of the Complaint.

176.    Defendants each commonly controlled the terms of compensation and employment of Plaintiffs, Collective Members, and Class Members and are associated with one another with respect to the terms of compensation and employment of Plaintiffs, Collective Members, and Class Members.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 176 of the Complaint.

177.    Based on the foregoing, Defendants' conduct in this regard was a willful violation of the Fair Labor Standards Act and entitles Plaintiffs and all other similarly situated drivers, couriers, and delivery drivers who opt into this litigation to compensation for all overtime hours worked, liquidated damages, attorneys' fees and court costs.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 177 of the Complaint.

## <u>SECOND CAUSE OF ACTION</u>
**820 Ill. Comp. Stat.105/4a; 56 Ill. Admin. Code §210.400 *et seq.* – Unpaid Overtime On behalf of Illinois Plaintiffs and the Illinois Class**

178.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

**ANSWER:**    Defendants reassert and incorporate herein by reference the answers to the preceding Paragraphs of the Complaint, as if fully restated herein.

179.    At all relevant times, Defendants have been, and continue to be, employers within the meaning of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105 ("IMWL"); the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115 ("IWPCL") and related regulations, 56 Ill. Admin. Code §210 and 56 Ill. Admin. Code §300 (collectively the "Illinois Wage Laws"). At all relevant times, Defendants employed employees, including Plaintiffs and each of the Illinois Class members, within the meaning of the Illinois Wage Laws.

**ANSWER:** For all purposes relevant to this case, and specifically with regard to Plaintiffs and all individuals Plaintiffs purport to represent, Defendants deny the allegations set forth in Paragraph 179 of the Complaint.

180. Illinois law requires employers, such as Defendants, to pay overtime compensation to all non-exempt employees for all hours worked over forty per workweek.

**ANSWER:** Paragraph 180 of the Complaint sets forth conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendants deny the allegations set forth in Paragraph 180 of the Complaint.

181. Plaintiffs and the Illinois Class members were non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 181 of the Complaint.

182. Throughout the Illinois Class period, and continuing through the present, Plaintiffs and the Illinois Class members regularly worked in excess of forty hours in a workweek.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 182 of the Complaint.

183. Defendants have engaged in a widespread pattern, policy, and practice of violating the overtime provisions of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/4a, and supporting IDOL regulations, 56 Ill. Admin. Code §210.400 *et seq.,* as detailed in this Amended Class Action Complaint.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 183 of the Complaint.

184. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiffs and the Illinois Class members have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendants in an amount to be established at trial, prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 184 of the Complaint.

### THIRD CAUSE OF ACTION
### 820 Ill. Comp. Stat.115/9; 56 Ill. Admin. Code §300.700 *et seq.* – Unlawful Deductions
### On behalf of Illinois Plaintiffs and the Illinois Classes

185.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

**ANSWER:** Defendants reassert and incorporate herein by reference the answers to the preceding Paragraphs of the Complaint, as if fully restated herein.

186.    Defendants have engaged in a widespread pattern, policy, and practice of violating 820 Ill. Comp. Stat. 115/9, as detailed in this Amended Class Action Complaint.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 186 of the Complaint.

187.    At all times relevant, Plaintiffs and the Illinois Class members have been employees within the meaning of 820 Ill. Comp. Stat. 105/3(d) and 820 Ill. Comp. Stat. 115/2 and supporting IDOL Regulations.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 187 of the Complaint.

188.    At all times relevant, Defendants have been employers within the meaning of 820 Ill. Comp. Stat. 105/3(c) and 820 Ill. Comp. Stat. 115 and supporting IDOL Regulations.

**ANSWER:** For all purposes relevant to this case, and specifically with regard to Plaintiffs and all individuals Plaintiffs purport to represent, Defendants deny the allegations set forth in Paragraph 188 of the Complaint.

189.    The Illinois Wage Payment and Collection Act and supporting IDOL Regulations apply to Defendants and protect the Plaintiffs and the Illinois Class members.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 189 of the Complaint.

190.    By conduct described herein, Defendants made unlawful deductions from Plaintiffs' and the Illinois Class members' wages in violation of 820 Ill. Comp. Stat. 115/9 and 56 Ill. Admin. Code §300.700 *et seq.*

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 190 of the Complaint.

191.    In addition, Defendants have required Illinois Plaintiffs and the members of the Illinois Class to incur expenses for Defendants' benefit without reimbursement.  The required and unreimbursed expenses incurred by Illinois Plaintiffs and the members of the Illinois Class for the benefit of Defendants were unlawful deductions from the wages of Illinois Plaintiffs and the Illinois Class members, in violation of 820 Ill. Comp. Stat. 115/9 and 56 Ill. Admin. Code §300.700 *et seq.*

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 191 of the Complaint.

<u>**FOURTH CAUSE OF ACTION**</u>
**New York Labor Law Article 19 - Unpaid Overtime**
**On behalf of New York Plaintiff and the New York Class**

192.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

**ANSWER:**    Defendants reassert and incorporate herein by reference the answers to the preceding Paragraphs of the Complaint, as if fully restated herein.

193.    At all relevant times, Defendants have been, and continue to be, employers of New York Plaintiff and the New York Class members, and New York Plaintiff and the New York Class members have been employees of Defendants, within the meaning of the NYLL §§ 190, 651(5), 652 and supporting New York State Department of Labor ("NYSDOL") Regulations.

**ANSWER:**    Defendants deny the allegations set forth in Paragraph 193 of the Complaint.

194.    NYLL Article 19 requires employers, such as Defendants, to pay overtime compensation at a rate of one and one-half times the regular rate of pay to all non-exempt employees for all hours worked over forty per workweek.

**ANSWER:** Paragraph 194 of the Complaint sets forth conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendants deny the allegations set forth in Paragraph 194 of the Complaint.

195. New York Plaintiff and the New York Class members were non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 195 of the Complaint.

196. Throughout the New York Class period, and continuing through the present, New York Plaintiff and the New York Class members regularly worked in excess of forty hours in a workweek.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 196 of the Complaint, and therefore deny any and all allegations set forth in Paragraph 196 of the Complaint.

197. Defendants have engaged in a widespread pattern, policy, and practice of violating the overtime provisions of NYLL Article 19, §§ 650 *et seq.,* and supporting NYSDOL regulations, as detailed in this Amended Class Action Complaint.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 197 of the Complaint.

198. Through their knowing and intentional failure to pay New York Plaintiff and the members of the New York Class overtime for hours worked in excess of 40 in a workweek, Defendants have willfully violated the NYLL Article 19, §§ 650 *et seq.,* and supporting NYSDOL regulations.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 198 of the Complaint.

199. Defendants failed to post, in a conspicuous place in their establishments, a notice issued by tile NYSDOL summarizing minimum wage and overtime provisions, in violation of the NYLL and supporting NYSDOL regulations including but not limited to 12 NYCRR § 137-2.3.

-54-

**ANSWER:** Defendants deny the allegations set forth in Paragraph 199 of the Complaint.

200.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, New York Plaintiff and the New York Class members have sustained damages, including loss of earnings for hours of overtime worked on behalf of Defendants in an amount to be established at trial, prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 200 of the Complaint.

**FIFTH CAUSE OF ACTION**
**New York Labor Law Article 6 – Record-Keeping Violations**
**On behalf of New York Plaintiff and the New York Class**

201.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

**ANSWER:** Defendants reassert and incorporate herein by reference the answers to the preceding Paragraphs of the Complaint, as if fully restated herein.

202.    Defendants have willfully failed to supply New York Plaintiff and the members of the New York Class notice as required by NYLL Article 6, § 195, in English or the language identified by New York Plaintiff and the members of the New York Class as their primary language, containing New York Plaintiff's and the New York Class members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL Article 6, § 191; the name of the employer, and "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 202 of the Complaint.

203.    Defendants have willfully failed to supply New York Plaintiff and the members of the New York Class with an accurate statement of wages as required by NYLL Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer, rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate

or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 203 of the Complaint.

204. Due to Defendants' violation of the NYLL, New York Plaintiff and the New York Class members are each entitled to recover from Defendants one hundred dollars for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars each, as provided for by NYLL Article 6, § 198(1)-d, fifty dollars for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars each, as provided for by NYLL Article 6, § 198(1)-b, reasonable attorneys' fees, costs, and injunctive and declaratory relief.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 204 of the Complaint.

## SIXTH CAUSE OF ACTION
### New York Labor Law Article 6 – Unlawful Deductions
### On behalf of New York Plaintiff and the New York Class

205. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

**ANSWER:** Defendants reassert and incorporate herein by reference the answers to the preceding Paragraphs of the Complaint, as if fully restated herein.

206. The provisions of NYLL Article 6, § 193 apply to Defendants and protect New York Plaintiff and the members of the New York Class.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 206 of the Complaint.

207. Defendants have willfully reduced the wages of New York Plaintiff and the members of the New York Class by making unlawful deductions from their wages.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 207 of the Complaint.

208.    In addition, Defendants have required New York Plaintiff and the New York Class to incur expenses for Defendants' benefit without reimbursement.   The required and unreimbursed expenses incurred by New York Plaintiff and the members of the New York Class for the benefit of Defendants were unlawful deductions from the wages of New York Plaintiff and the New York Class members, in violation of NYLL Article 6, § 193.

**ANSWER:**    Defendants   deny   the   allegations   set   forth   in   Paragraph   208   of   the Complaint.

209.    Due to these violations, New York Plaintiff and the members of the New York Class are entitled to recover from Defendants deductions from their wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**ANSWER:**    Defendants   deny   the   allegations   set   forth   in   Paragraph   209   of   the Complaint.

### SEVENTH CAUSE OF ACTION
**Kentucky Wage Laws, Ky. Rev. Stat. §§ 337.010 *et seq.*, - Unpaid Overtime**
**On behalf of Kentucky Plaintiff and the Kentucky Class**

210.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

**ANSWER:**    Defendants reassert and incorporate herein by reference the answers to the preceding Paragraphs of the Complaint, as if fully restated herein.

211.    Defendants have engaged in a widespread pattern, policy, and practice of violating the Kentucky Wage Laws, as detailed in this Class Action Complaint.

**ANSWER:**    Defendants   deny   the   allegations   set   forth   in   Paragraph   211   of   the Complaint.

212.    The foregoing conduct, as alleged, violates Ky. Rev. Stat. §§ 337.010 *et seq.,* (collectively, "Kentucky Wage Laws").

**ANSWER:**    Defendants   deny   the   allegations   set   forth   in   Paragraph   212   of   the Complaint.

213.    At all relevant times, Defendants have been, and continue to be, "employer[s]" within the meaning of the Kentucky Wage Laws. At all relevant times, Defendants have

employed, and/or continue to employ, "employee[s]," including the Kentucky Plaintiff, and each of the members of the Kentucky Class, within the meaning of the Kentucky Wage Laws.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 213 of the Complaint.

214. Kentucky Wage Laws require an employer, such as Defendants, to pay all non-exempt employees overtime wages of one and one-half the regular rate of pay for all hours worked over 40 in a workweek and for all hours worked on the seventh consecutive day in a workweek.

**ANSWER:** Paragraph 214 of the Complaint sets forth conclusions of law to which no response is required. To the extent that a response is deemed necessary, Defendants deny any and all of the allegations set forth in Paragraph 214 of the Complaint.

215. The Kentucky Plaintiff and the Kentucky Class Members are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 215 of the Complaint.

216. At all relevant times, Defendants have had a policy and practice of failing and refusing to pay overtime pay to the Kentucky Plaintiff and the Kentucky Class members for their hours worked in excess of 40 hours per week.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 216 of the Complaint.

217. At all relevant times, Defendants have had a policy and practice of failing and refusing to pay overtime pay to the Kentucky Plaintiff and the Kentucky Class Members for their hours worked on the seventh consecutive day of a workweek.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 217 of the Complaint.

218. As a result of Defendants' failure to pay wages earned and due, and its decision to withhold wages earned and due, to the Kentucky Plaintiff and the Kentucky Class members at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, Defendants have violated, and continue to violate, the Kentucky Wage Laws.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 218 of the Complaint.

219. As a result of Defendants' failure to record, report, credit, and furnish to each of the Kentucky Plaintiff and the Kentucky Class members their respective wage and hour records showing all wages earned and due for all work performed, Defendants have failed to make, keep, preserve, and furnish such records, in violation of Ky. Rev. Stat. Ann.§ 337.320.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 219 of the Complaint.

220. Due to Defendants' violations of the Kentucky Wage Laws, Kentucky Plaintiff and the members of the Kentucky Class are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 220 of the Complaint.

## EIGHTH CAUSE OF ACTION
### Kentucky Wage Laws, Ky. Rev. Stat. §§ 337.010 *et seq*., - Unlawful Deductions
### On behalf of Kentucky Plaintiff and the Kentucky Class

221. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

**ANSWER:** Defendants reassert and incorporate herein by reference the answers to the preceding Paragraphs of the Complaint as if fully restated herein.

222. The provisions of Ky. Rev. Stat. § 337.060 apply to Defendants and protect Kentucky Plaintiff and the members of the Kentucky Class.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 222 of the Complaint.

223. Defendants have willfully reduced the wages of Kentucky Plaintiff and the members of the Kentucky Class by making deductions from their wages in violation of Ky. Rev. Stat. § 337.060.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 223 of the Complaint.

224. In addition, Defendants have required Kentucky Plaintiff and the Kentucky Class to incur expenses for Defendants' benefit without reimbursement. The required and unreimbursed expenses incurred by Kentucky Plaintiff and the members of the Kentucky Class for the benefit of Defendants were unlawful deductions from the wages of Kentucky Plaintiff and the Kentucky Class members, in violation of Ky. Rev. Stat. § 337.060.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 224 of the Complaint.

225. Due to Defendants' violations of the Kentucky Wage Laws, Kentucky Plaintiff and the members of the Kentucky Class are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 225 of the Complaint.

## NINTH CAUSE OF ACTION
**Connecticut Wage Payment Laws – Unpaid Overtime**
**On behalf of Connecticut Plaintiff and the Connecticut Class**

226. Plaintiffs reallege and incorporate by reference all allegations in the preceding paragraphs.

**ANSWER:** Defendants reassert and incorporate herein by reference the answers to the preceding Paragraphs of the Complaint as if fully restated herein.

227. Defendants have engaged in a widespread pattern, policy, and practice of violating Conn. Gen. Stat. §§ 31-58 *et seq.,* (collectively, "Connecticut Wage Payment Laws"), as detailed in this Class Action Complaint.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 227 of the Complaint.

228. At all relevant times, Defendants have been, and continue to be, "employer[s]" within the meaning of the Connecticut Wage Payment Laws. At all relevant times, Defendants have employed, and/or continue to employ, "employee[s]," including the Connecticut Plaintiff,

and each of the members of the Connecticut Class, within the meaning of the Connecticut Wage Payment Laws.

**ANSWER:** Defendants deny that they – either individually or collectively – constitute an "employer" with respect Plaintiffs and/or any of the individuals Plaintiffs purport to represent in this action, including within the meaning of the Connecticut Wage Payment Laws and deny any and all other allegations set forth in Paragraph 228 of the Complaint.

229. Defendants failed or refused to pay Connecticut Plaintiff and members of the. Connecticut Class overtime, at a rate equal to or greater than one and one half times their regular hourly rate, for hours worked in excess of forty hours a week, in violation of Conn. Gen. Stat. §§ 31-60 and 31-76c.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 229 of the Complaint.

230. As a result of Defendants' refusal or failure to pay overtime, Connecticut Plaintiff and the members of the Connecticut Class suffered a loss of wages owed.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 230 of the Complaint.

231. Defendants' failure or refusal to pay Connecticut Plaintiff and the members of the Connecticut Class overtime when due was knowing, intentional, done in bad faith and evidences a willful disregard for the rights of Connecticut Plaintiff and the members of the Connecticut Class under the Connecticut Wage Payment Laws.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 231 of the Complaint.

232. As a result of Defendants' failure to record, report, credit, and furnish to the Connecticut Plaintiff and the Connecticut Class members their respective wage and hour records showing all wages earned and due for all work performed, Defendants have failed to make, keep, preserve, and furnish such records, in violation of Conn. Gen. Stat. §§ 31-66 and 31-71f.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 232 of the Complaint.

233.     Due to Defendants' violations of the Connecticut Wage Laws, Connecticut Plaintiff and the members of the Connecticut Class are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 233 of the Complaint.

## <u>TENTH CAUSE OF ACTION</u>
### Connecticut Wage Payment Laws – Unlawful Deductions
### On behalf of Connecticut Plaintiff and the Connecticut Class

234.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

**ANSWER:**     Defendants reassert and incorporate herein by reference the answers to the preceding Paragraphs of the Complaint as if fully restated herein.

235.     The provisions of Conn. Gen. Stat. §§ 31-71e and 31-73 apply to Defendants and protect Connecticut Plaintiff and the members of the Connecticut Class.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 235 of the Complaint.

236.     Defendants have willfully reduced the wages of Connecticut Plaintiff and the members of the Connecticut Class by making deductions from their wages in violation of Conn. Gen. Stat. §§ 31-71e and 31-73.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 236 of the Complaint.

237.     In addition, Defendants have required Connecticut Plaintiff and the Connecticut Class to incur expenses for Defendants' benefit without reimbursement.  The required and unreimbursed expenses incurred by Connecticut Plaintiff and the members of the Connecticut Class for the benefit of Defendants were unlawful deductions from the wages of Connecticut Plaintiff and the Connecticut Class members, in violation of Conn. Gen. Stat. §§ 31-71e and 31-73.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 237 of the Complaint.

238.     Defendants' willful reduction of the wages of Connecticut Plaintiff and the members of the Connecticut Class and resulting failure to pay all moneys due and/or all wages due, in a timely manner, was knowing, intentional, done in bad faith and evidences a willful disregard for the rights of Connecticut Plaintiff and the members of the Connecticut Class under the Connecticut Wage Payment Laws.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 238 of the Complaint.

239.     Due to Defendants' violations of the Connecticut Wage Laws, Connecticut Plaintiff and the members of the Connecticut Class are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 239 of the Complaint.

## ELEVENTH CAUSE OF ACTION
### Connecticut Wage Payment Laws – Failure to Pay All Monies and Wages Due
### On behalf of Connecticut Plaintiff and the Connecticut Class

240.     Plaintiffs reallege and incorporate by reference all allegations in the preceding paragraphs.

**ANSWER:**     Defendants reassert and incorporate herein by reference the answers to the preceding Paragraphs of the Complaint as if fully restated herein.

241.     As a result of their policies and practices, Defendants did not pay "all moneys due" weekly to Connecticut Plaintiff and the members of the Connecticut Class, in violation of Conn. Gen. Stat. § 31-71b.

**ANSWER:**     Defendants deny the allegations set forth in Paragraph 241 of the Complaint.

242.     The paychecks that were issued to Connecticut Plaintiff and the members of the Connecticut Class did not include "all wages due" for each pay period worked, as required by Conn. Gen. Stat. § 31-71b, as a result of Defendants' policy of treating Connecticut Plaintiff and the members of the Connecticut Class as independent contractors.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 242 of the Complaint.

243.    The paychecks that were issued to Connecticut Plaintiff and the members of the Connecticut Class did not include "all wages due" for each pay period worked, as required by Conn. Gen. Stat. § 31-71b, as a result of Defendants' policy of not paying overtime when Connecticut Plaintiff and the members of the Connecticut Class worked in excess of 40 hours in a given workweek.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 243 of the Complaint.

244.    The paychecks that were issued to Connecticut Plaintiff and the members of the Connecticut Class did not include "all wages due" for each pay period worked, as required by Conn. Gen. Stat. § 31-71b, as a result of Defendants' policy of making unlawful deductions from the paychecks of Connecticut Plaintiff and the members of the Connecticut Class.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 244 of the Complaint.

245.    As a result of the policies and practices described herein, Defendants did not pay "all wages due" at the time of discharge or voluntary termination to Connecticut Plaintiff and the members of the Connecticut Class, in violation of Conn. Gen. Stat. § 31-71c.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 245 of the Complaint.

246.    Defendants' failure or refusal to pay Connecticut Plaintiff and the members of the Connecticut Class all moneys due and/or all wages due, in a timely manner, was knowing, intentional, done in bad faith and evidences a willful disregard for the rights of Connecticut Plaintiff and the members of the Connecticut Class under the Connecticut Wage Payment Laws. Due to Defendants' violations of the Connecticut Wage Laws, Connecticut Plaintiff and the members of the Connecticut Class are entitled to recover from Defendants their unpaid wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 246 of the Complaint.

**DEMAND FOR RELIEF**

247. WHEREFORE, Plaintiffs claim:

    a.    Designation of this action as a collective action pursuant to the FLSA and prompt issuance of notice pursuant to 29 U.S.C. § 216(b);

    b.    Certification of the state law claims in this action as a class action pursuant to Federal Rule of Civil Procedure 23;

    c.    Designation of Plaintiffs as Class Representatives;

    d.    A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

    e.    Appropriate equitable and injunctive relief to remedy Defendants' violations of state law, including but not necessarily limited to an order enjoining Defendants from continuing their unlawful practices;

    f.    Unpaid overtime wages under the Fair Labor Standards Act, the Illinois Wage Laws, the NYLL, the Kentucky Wage Laws and the Connecticut Wage Payment Laws;

    g.    Liquidated damages under the Fair Labor Standards Act, the Illinois Wage Laws, the NYLL, the Kentucky Wage Laws and the Connecticut Wage Payment Laws;

    h.    Appropriate statutory penalties;

    i.    Restitution;

    j.    Pre-Judgment and Post-Judgment interest, as provided by law;

    k.    Attorneys' fees and costs under the Fair Labor Standards Act, the Illinois Wage Laws, the NYLL, the Kentucky Wage Laws and the Connecticut Wage Payment Laws, including expert fees and costs; and

    l.    Such other injunctive and equitable relief as the Court may deem just and proper.

**ANSWER:** Defendants deny that Plaintiffs, individually and on behalf of any and all other individuals whom Plaintiffs purport to or seek to represent in this action, are entitled to the requested relief sought in Paragraph 247 of the Complaint, including subparagraphs "a" – "l", or any other relief whatsoever. Defendants further deny any and all remaining allegations in the Paragraph. To the extent that any of the foregoing allegations in the Complaint have not been expressly admitted or denied, they are hereby denied. Wherefore, having fully answered,

Defendants pray that Plaintiffs take nothing by their Complaint; that this matter be dismissed with prejudice in its entirety, that judgment be entered against Plaintiffs and in favor of Defendants for all costs and attorneys' fees incurred by it in defending this action; and that the Defendants be granted such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

**ANSWER:** Defendants admit that Plaintiffs purport to demand a trial by jury, but deny any and all remaining allegations set forth in this Paragraph.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST DEFENSE

As a separate and distinct defense, each Defendant individually and separately alleges that Plaintiffs' Complaint and each claim therein fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

As a separate and distinct defense, each Defendant individually and separately alleges that the claims averred in Plaintiffs' Complaint are barred in whole or in part by the applicable statute of limitations.

### THIRD DEFENSE

As a separate and distinct defense, each Defendant individually and separately alleges that the claims averred in Plaintiffs' Complaint fail in whole or in part because Plaintiffs have failed to exhaust all contractual and/or administrative remedies and/or failed to comply with any and all statutorily mandated requirements prior to initiating a lawsuit or bringing a claim of the types brought in this lawsuit.

## FOURTH DEFENSE

As a separate and distinct defense, each Defendant individually and separately alleges that at all material times, it acted in accordance with a good faith belief that its actions complied with or were exempted from application of all statutes, laws, and regulations Plaintiffs allege it violated in the Complaint. Accordingly, no Defendant willfully violated any statute, law or regulation at issue in this case, including the Fair Labor Standards Act, the Illinois Minimum Wage Law, the Illinois Wage Payment and Collection Act, New York Labor Law (including but not limited to Articles 6 and 19), the New Your State Department of Labor regulations, the Kentucky Wage Laws (Ky. Rev. Stat. §§ 337.010 *et seq*.), or the Connecticut Wage Payment Laws (Conn. Gen. Stat. §§ 31-58). Plaintiffs and the individuals they purport to represent are, therefore, unentitled to statutory penalties or any other damages that are punitive or exemplary in nature, and, further, a two year statute of limitations must be applied with respect to the claims brought under the FLSA.

## FIFTH DEFENSE

As a separate and distinct defense, each Defendant individually and separately alleges that at all material times, it exercised reasonable care to prevent and, if applicable, promptly correct any alleged violation of law, and that Plaintiffs and the individuals they purport to represent unreasonably failed to take advantage of the preventive and corrective opportunities provided by it or other reasonable steps available to avoid harm. Accordingly, Plaintiffs and the individuals they purport to represent are barred from recovering for all or some of the acts alleged in the Complaint.

## SIXTH DEFENSE

As a separate and distinct defense, each Defendant individually and separately alleges

that Plaintiffs and/or the individuals they purport to represent have failed, in whole or in part, to properly mitigate their alleged damages, if any, or, alternatively, have no damages.

**SEVENTH DEFENSE**

As a separate and distinct defense, each Defendant individually and separately alleges that Plaintiffs' claims fail to the extent they and/or the individuals they purport to represent are exempt from overtime and other wage payment requirements, including, *inter alia*, pursuant to the Motor Carrier Exemption, Title 26 of the Federal Motor Carrier Safety Act ("FMCSA"), 49 U.S.C. § 31141 and implementing regulations. Consequently, Plaintiffs and the individuals they purport to represent are exempt from the requirements of the state and federal laws Plaintiffs allege Defendants violated, including, *inter alia*, the Fair Labor Standards Act, the Illinois Wage Payment and Collection Act, Illinois Minimum Wage Law, Connecticut wage Payment Laws (Conn. Gen. Stat. §§ 31-58 et seq.), New York Labor Laws (including but not limited to Articles 6 and 9, and applicable New York State Department of Labor regulations), Kentucky Wage Laws (Ky. Rev. Stat.§§ 337.010 *et seq.*, and the supporting Kentucky State Department of Labor Regulations), or any other similar law or regulation, and are therefore not entitled to any overtime pay or related penalties or damages for such periods.

**EIGHTH DEFENSE**

As a separate and distinct defense, each Defendant individually and separately alleges that, at all material times, Plaintiffs and/or the individuals they purport to represent were paid and received all monies to which they were entitled and, therefore, their claims fail.

**NINTH DEFENSE**

As a separate and distinct defense, each Defendant individually and separately alleges that the claims alleged in the Complaint are barred by the equitable doctrines of waiver, estoppel, laches, consent, and unclean hands.

**TENTH DEFENSE**

As a separate and distinct defense, each Defendant individually and separately alleges that even if Plaintiffs and/or the individuals they purport to represent suffered injuries or damages as alleged, which each Defendant denies, their claims for relief are barred because such damages are the result of their own conduct or the conduct of other individuals or entities besides Defendants.

**ELEVENTH DEFENSE**

As a separate and distinct defense, each Defendant individually and separately alleges that Plaintiffs have not alleged, nor can they establish, facts sufficient to justify an award of costs or attorneys' fees, and are further barred from recovering attorneys' fees because they have failed to make a written demand of the sum allegedly due and owing pursuant to the requirements of 705 ILCS 225/1 and/or any other similar state or federal law or regulation.

**TWELFTH DEFENSE**

As a separate and distinct defense, each Defendant individually and separately alleges that to the extent the Court determines that it owes any damages or amount to Plaintiffs or any individual Plaintiffs purport to represent, such damages or amount must be offset by any monies and/or benefit it paid to the Plaintiff or individual, including for contract services rendered.

**THIRTEENTH DEFENSE**

As a separate and distinct defense, each Defendant individually and separately alleges that Plaintiffs and the individuals they purport to represent fail to satisfy the requirements for class treatment under Rule 23 of the Federal Rules of Civil Procedure and/or under any state law or regulation governing class treatment, and further fail to satisfy requirements for maintenance of a collective action under 29 U.S.C. §216(b), including, *inter alia*, the requirement that Plaintiffs be proper class representatives. Therefore, this action may not be maintained as a class or collective action, and Plaintiffs cannot sue as representative parties.

**FOURTEENTH DEFENSE**

As a separate and distinct defense, each Defendant individually and separately alleges that Plaintiffs' claims are barred, in whole or in part, on the grounds that such claims would violate Defendants' rights to Equal Protection under the Illinois, Kentucky, Connecticut, New York, and federal Constitutions.

**FIFTEENTH DEFENSE**

As a separate and distinct defense, each Defendant individually and separately alleges that certification of a class or collective action, as applied to the facts and circumstances of this case, would constitute a denial of Defendants' Due Process rights, both substantive and procedural, in violation of the of the Illinois, Kentucky, Connecticut, and New York Constitutions and the Fourteenth Amendment to the United States Constitution.

**SIXTEENTH DEFENSE**

As a separate and distinct defense, each Defendant individually and separately alleges that Plaintiffs' claims are barred, in whole or in part, on the grounds that such claims would

impose excessive fines and penalties barred by the Illinois, Kentucky, Connecticut, New York, and federal Constitutions.

## SEVENTEENTH DEFENSE

As a separate and distinct defense, each Defendant individually and separately alleges that Plaintiffs' claims for injunctive relief are barred, in whole or in part, on the grounds that Plaintiffs and other individuals whom Plaintiffs purport to or seek to represent in this action have adequate remedies at law, and further because Plaintiffs lack standing to request such relief because Plaintiffs do not currently contract with or perform any services arranged by any Defendant.

## EIGHTEENTH DEFENSE

As a separate and distinct defense, each Defendant individually and separately alleges that Plaintiffs' claims fail because Plaintiffs and all others individuals whom they purport to represent have been fully compensated for any and all amounts owed, and by accepting the payments made to them, have effectuated an accord and satisfaction of their claims.

## NINETEENTH DEFENSE

As a separate and distinct defense, each Defendant individually and separately alleges that the First Amended Complaint and each cause of action set forth therein are barred to the extent that they are in conflict with any applicable settlement agreements or releases of claims that have been or may be entered into between any Defendant(s) and any Plaintiff(s) or any other individual whom Plaintiffs purport to represent in this action.

## TWENTIETH DEFENSE

As a separate and distinct defense, each Defendant individually and separately alleges that Plaintiffs' claims are barred in whole or in part by the doctrine of *de minimis non curat lex*.

## TWENTY-FIRST DEFENSE

As a separate and distinct defense, each Defendant individually and separately alleges that Plaintiffs' claims fail because they are preempted by the Federal Aviation Administration Authorization Act, 49 U.S.C. section 14501, et seq. (the "FAAAA"), because they improperly regulate and control the rates, routes and/or services of intrastate motor carriers and interfere with the competitive market forces within the industry.

## RESERVATION OF ADDITIONAL AFFIRMATIVE AND OTHER DEFENSES

Defendants do not presently know all facts with respect to the conduct alleged by Plaintiffs sufficient to state all affirmative and other defenses at this time. Defendants therefore reserve the right to amend this Answer should one or more Defendant later discover facts demonstrating the existence of an additional affirmative or other defense.

**WHEREFORE**, Defendants Scriptfleet, Partsfleet, Partsfleet II, and Fleetgistics Holdings pray that:

1. The Complaint be dismissed in its entirety with prejudice and Plaintiffs take nothing by their Complaint;

2. Judgment be entered against Plaintiffs and in favor of Defendants Scriptfleet, Partsfleet, Partsfleet II, and Fleetgistics Holdings;

3. Defendants Scriptfleet, Partsfleet, Partsfleet II, and Fleetgistics Holdings be awarded their costs of suit and reasonable attorney's fees and costs incurred in defending this lawsuit; and

4.   The Court award Defendants Scriptfleet, Partsfleet, Partsfleet II, and Fleetgistics

Holdings such other and further relief as it deems appropriate.


Dated: January 9, 2013                              Respectfully Submitted,

                                                    */s/ Damon M. Ott*
                                                    Damon M. Ott



Ethan G. Zelizer ARDC# 6280096
LITTLER MENDELSON
A Professional Corporation
321 North Clark Street
Suite 1000
Chicago, IL  60654
Ph: 312.372.5520
Fax: 312.372.7880
ezelizer@littler.com


Damon M. Ott (*pro hac vice*)
Robert Hulteng (*pro hac vice*)
Aurelio J. Perez (*pro hac vice*)
LITTLER MENDELSON
A Professional Corporation
650 California Street
20th Floor
San Francisco, CA 94108
Tel. 415.433.1940
Fax 415.399.8490

**<u>CERTIFICATE OF SERVICE</u>**

I, Damon M. Ott, an attorney, certify that on January 9, 2013, I caused a copy of the foregoing Defendants' Answer to Plaintiffs' Amended Complaint to be electronically filed with the Clerk of the Court using the CM/ECF system, which served a Notice of Electronic filing upon those registered to receive electronic service.


*/s/Damon M. Ott*_____


Firmwide:117235042.9 063404.1005